Roby vs. The State.

ROBY, Plaintiff in error, vs. THE STATE, Defendant in error.

*June 14 — June 24, 1897.*

*Criminal law and practice: Evidence: Plea in abatement: Reversal after completion of sentence.*

1. In a prosecution for the larceny of a bank draft, a letter purporting to have been written by the cashier of the bank which issued the draft (who was not present at the trial) to the payee, tending, perhaps, to raise a doubt as to the genuineness of the latter's indorsement of the draft, was inadmissible; and its admission constituted a prejudicial error whether the matter contained therein was material or not.

2. Where an unverified plea in abatement is returned as a part of the record, and there is nothing to show that it was ever brought to the attention of the court or ruled upon, it will be presumed that the court refused to receive the plea because not properly proven as required by sec. 4647, R. S.

3. Where a person has prosecuted a writ of error while serving his sentence, the fact that his sentence expired before the decision of his case does not affect his right to a reversal of the judgment, if erroneous.

ERROR to review a judgment of the circuit court for Columbia county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This is a criminal action for the larceny of a bank draft for the sum of $340.50. The information contained a second count for receiving and concealing said draft knowing it to be stolen, and a general verdict of guilty was rendered, and to reverse the sentence thereon this writ of error was prosecuted.

The evidence upon the trial showed that in the latter part of April, 1894, one August Affeld found a letter on the highway containing a bank draft payable to the order of Lucy S. Rice in the sum of $340.50. The draft was issued by James M. Wilkinson, a banker at Marquette, Michigan, April 21, 1894, was signed by A. F. Marquard, cashier, and was drawn upon the Merchants' Loan & Trust Company, of Chicago, Illinois. This draft was found on the road between the city of Juneau and the home of said Lucy S. Rice. It appears that Affeld made several attempts to get said draft cashed, but did not succeed owing to the fact that it was not indorsed by Mrs. Rice. Afterwards he turned the draft over to one Ernst Hilgendorf, his cousin, who also attempted to get the draft cashed but failed. Later Hilgendorf turned the draft over to the defendant, *Roby.* At the time of this last transfer the evidence tends to show that the draft had the name of Lucy S. Rice upon the back, but the evidence does not show who wrote it. *Roby* claims to have been innocent in the matter, and to have supposed that the draft was the property of Hilgendorf and was properly indorsed by Mrs. Rice. He succeeded in getting the draft cashed in the city of Watertown, the same being indorsed by Hilgendorf, *Roby*, and one George Lempke. He retained $110 of the money that Hilgendorf had agreed he might retain, and the balance he turned over to Hilgendorf. Mrs. Rice was not called as a witness on the trial, nor was any direct testimony given to show that she had not authorized her name to be signed upon the back of the draft, although there was evidence tending to show that the signature was not in her handwriting. There was introduced upon the trial a letter purporting to have been written by Marquard, the cashier of the bank which issued the draft, to Mrs. Rice, June 2, 1894, which letter is as follows:

" Dear Madam : On April 21st Mr. Robert Shaw purchased one draft, No. 39,125, on Chicago, for $340.50, payable to.

your order.   He shows us your letter of May 26th to-day,
claiming that you have never received the draft.   On May
15th the German National Bank of Beaver Dam, Wisconsin,
sent us this draft, with your name on the back, and purport-
ing to be signed by you, and asking us to remit to them if
we knew your signature.   We did not know it, so returned
draft to them.   If you did not receive and put your name
on the draft, some one has gotten possession of it who was
not entitled to it, and I have written our Chicago correspond-
ent to-day, stopping payment on the same."

The envelope containing the letter was also offered in evi-
dence, with the postmark thereon.

*J. E. Malone*, for the plaintiff in error.

For the defendant in error there was a brief by the *Attor-
ney General* and *John L. Erdall*, assistant attorney general,
and oral argument by *Mr. Erdall*.

WINSLOW, J.   The letter of the bank cashier in Michigan
to Mrs. Rice was clearly inadmissible.   It was the unsworn
statement of a man in Michigan not present at the trial
and not subject to cross-examination.   Whether the state-
ments contained in the letter were material or not, we re-
gard its admission as prejudicial error, which must result in
a reversal of the judgment.   The defendant had a right to
be tried upon evidence legally admissible.   If the statements
made in the letter concerned material facts in dispute and
necessary to conviction, then the error is clearly prejudicial.
If, on the other hand, the statements made in the letter, or
the inferences naturally resulting therefrom, concerned mat-
ters not in issue and immaterial to the controversy, the
error is also prejudicial, because it cannot be doubted from
inspection of the letter that such facts and inferences were
unfavorable to the defendant.   In either event a new trial
is necessary.

It is claimed by the plaintiff in error that he interposed a

Roby vs. The State.

plea in abatement, on the ground that he had had no preliminary examination, and that the plea was improperly overruled without issue being taken thereon. We find among the papers returned in the case as the record an unverified plea of this kind, but we find nowhere in the record or bill of exceptions anything showing that the plea was ever brought to the attention of the court or ruled upon. In this situation of the record, we must assume that the court refused to receive the plea because it was not proven by affidavit or other evidence, as provided by sec. 4647, R. S.

It appears by the record that the plaintiff in error was sentenced to one year's imprisonment in May, 1896, and consequently that his term must now have expired. This fact, however, makes no difference with the disposition of the case. A person convicted of crime may prosecute his writ of error while serving his sentence, and the fact that he may serve out his entire sentence before the decision of his case does not affect his right to a reversal of the judgment if it be erroneous. The mere payment of a judgment in a civil cause does not operate to bar or waive the right to appeal therefrom (*Sloane v. Anderson*, 57 Wis. 123), and for stronger reasons the compulsory working out of a judgment in a criminal case does not debar a man from obtaining a reversal of an erroneous conviction, and thus removing the stigma which wrongly rests on his name and reputation.

*By the Court.*— Judgment reversed, and action remanded for a new trial.