STATE, APPELLANT, v. AETNA BANKING AND TRUST CO., RESPONDENT.

_(No. 2,319.)

(Submitted October 4, 1906. Decided October 22, 1906.)

*Banks and Banking—State Examiner—Statutes—Constitution.*

Banks—State Examiner—Penal Statutes—Construction.
    1. Chapter C, Laws of 1903, page 184, relating to the state examiner and providing penalties for failure of banks, investment companies, etc., to comply with its requirements, must be strictly construed.

Foreign Banking Companies—State Examiner—Statutory Construction.
    2. *Held,* that foreign banking corporations doing business in this state were not intended by the legislature to be included within the provisions of section 497 of the Political Code, as amended by Act of 1903 (Laws 1903, Chap. C, p. 184), which creates the state examiner's fund and imposes upon "each bank, banking corporation, savings bank, investment and loan company, incorporated under the laws of this state" the duty of paying into this fund certain fees; and that, therefore, such a concern is not subject to the penalties prescribed in section 498 for a noncompliance with the provisions of section 497.

(379)

Appeal—Constitutional Questions—Determination.

    3. The constitutionality of a statute will not be inquired into by the supreme court, if an inquiry into that question is not necessary to a decision of the particular case before it.

Foreign Banking Companies—State Examiner—Statutory Construction—Elimination—Result.

    4. The proviso in section 15 of the Act of 1905 (Laws 1905, Chap. 104, p. 232),—which Act regulates, among others, foreign banking corporations doing business in the state,—to the effect that the legislation shall not apply to any such concerns doing business in the state openly and lawfully at a fixed place at the time of its approval, may not be eliminated, if invalid, so as to permit the remainder of the Act to stand, since it is not apparent that the proviso was not an inducement to the legislature in passing the Act, and, by elimination of the proviso by judicial construction, such a corporation would be made amenable to the penalties provided by the Act, contrary to the desire of the legislature at the time of its passage.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by the state against the Aetna Banking and Trust Company. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Appellant.

*Mr. Wm. T. Pigott,* and *Mr. J. L. Wines,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The state of Montana and the Aetna Banking and Trust Company, acting under the provisions of section 2050 of the Code of Civil Procedure, submitted to the district court a case containing an agreed statement of the facts upon which the controversy then existing between them depended. The court found for the Aetna Banking and Trust Company, and judgment was entered accordingly. From that judgment the state appeals.

The agreed statement of facts discloses that since 1901 the Aetna Banking and Trust Company has been a foreign corporation engaged in a banking business at a known and fixed

place of business in Butte, Montana, with a capital stock of
$100,000. It has at all times fully complied with the laws pre-
scribing the conditions under which foreign corporations may
do business in this state. (Laws 1901, p. 150.) During the
year ending November 1, 1904, the state examiner demanded
from this respondent that it furnish certain reports ordered by
him, that it permit him to examine and investigate its affairs,
and that it pay into the state examiner's fund the sum of
$100. Every one of these demands was refused. Like demands
were made during the year ending November 1, 1905, with the
same result; and these refusals gave rise to this controversy.

The state contends (1) that it is entitled to collect the pen-
alties mentioned in section 498, Chapter C, page 188, Laws of
1903, on account of the refusal of this respondent to comply
with the demands made in 1904; (2) that it may recover the
penalties provided by Chapter 104, page 232, Laws of 1905, on
account of the failure of the respondent to comply with the
demands made in 1905.

1. Chapter C, Laws of 1903, is entitled "An Act to amend
an Act approved March 4, 1897, entitled 'An Act to amend
Sections 490 and 506 inclusive, being all of Article 11, Chap-
ter 3, Title 1, Part 3, Political Code of Montana, providing for
the Appointment of a State Examiner and defining his Duties
and Powers.' " Section 491 of the Chapter defines the duties
of the state examiner, and certain penalties are provided for
offenses committed by officers or agents of the concerns men-
tioned; but these provisions have no application here where
the corporation itself is a party to a civil action. This is not
a criminal prosecution against the officers of this respondent.
The Chapter also fixes the salary of the state examiner and his
deputy, and then, in section 497, creates the "State Examiner's
Fund," and provides for the payment into this fund of cer-
tain amounts from the counties of the state, according to classi-
fication, also for the payment into this fund by "each bank,
banking corporation, savings bank, investment and loan com-
pany, incorporated under the laws of this state," of certain

fees according to the capital stock of the concern. A concern with a capital stock of $100,000 is required to pay $100. Each building and loan association, whether foreign or domestic, doing business in this state, is required to pay into this fund one-twentieth of one per cent of its assets as shown by its last annual statement. Section 497 then provides: "Any excess of the expenses of such examination incurred in pursuance of this title over and above the fee herein provided for shall be paid by the state from any money in the general fund not otherwise appropriated."

Section 498 of the Chapter provides: "Any banks, banking corporation, saving bank, building and loan association, investment and loan company, incorporated under the laws of this state or doing business under any law of this state concerning corporations, that shall fail or neglect to pay the state treasury within ten days after the first day of November each year the sum due as specified in the section next preceding shall forfeit to the state ten dollars ($10.00) for every day it shall so fail," etc.

In order for the state to prevail as to its first contention, it must show that this respondent is liable to pay the fee mentioned in section 497 above. This respondent is a corporation organized under the laws of the state of West Virginia and doing business in Montana. It is conceded that section 497 above does not in terms apply to such a concern. That section only mentions banks, banking corporations, etc., *incorporated under the laws of this state,* and foreign and domestic building and loan associations. But the attorney general insists that the phrase "or doing business under any law of this state concerning corporations" found in section 498, should be read into section 497, immediately after the phrase "incorporated under the laws of this state," and, if this be done, then the right of the state to prevail as to its first contention is clear.

We need not consider what rule of statutory construction applies to statutes not penal in character. Chapter C of the Laws of 1903 is a highly penal statute, and the rule, universally rec-

ognized, is that a statute of this character must be strictly construed. The rule is founded upon the principle that the power of punishment vests in the legislature, not in the courts. "Strict construction, as applied to statutes, means that they are not to be so extended by implication beyond the legitimate import of the words used in them as to embrace cases or acts not clearly described by such words, and to bring them within the prohibition or penalty of such statutes. It does not mean that words shall be so restricted as not to have their full meaning, but that everything shall be excluded from the operation of statutes so construed which does not clearly come within the meaning of the language used." (26 Am. & Eng. Ency. of Law, 657.)

It is not sufficient to say that there is no good reason for the omission from section 497 above of the phrase we are now asked to supply. "Where the language of a statute is clear, it is not for the court to say that it shall be so construed as to embrace cases, because no good reason can be assigned why they were excluded from its provisions." (26 Am. & Eng. Ency. of Law, 601.) "It is, however, the object of the construction of penal as of all other statutes to ascertain the true legislative intent; and while the courts will not, on the one hand, apply such statutes to cases which are not within the obvious meaning of the language employed by the legislature, even though they be within the mischief intended to be remedied, they will not, on the other hand, apply the rule of strict construction with such technicality as to defeat the purpose of ascertaining the true meaning and intent of the statute." (26 Am. & Eng. Ency. of Law, 659.) If the intention of the legislature is made manifest by the language employed in the Act, then there is no occasion for resorting to rules of construction or interpretation. If the language is plain, it will be construed as it reads and the words employed given their full meaning.

In order to determine, if possible, just what institutions the legislature intended to burden with the fees mentioned in sec-

tion 497 above, resort may profitably be had to the history of the legislation upon the subject. The first statute dealing with the subject of bank examination was reported by the Code commission, and adopted as a part of the Political Code (sections 490-496). Provision was made for the appointment of a state examiner, his salary fixed, and his duties defined. But no fees were required to be paid by the concerns examined by him, and there is not any reference in the Act to foreign banking corporations doing business in the state or to foreign or domestic building and loan associations. Apparently the purpose in the beginning was to subject to the supervision of the state examiner only domestic corporations and private persons doing a banking and loaning business. This statute was immediately superseded by the Act of March 18, 1895 (Political Code, sections 497-506). By section 498 of this Act the duties of the state examiner are defined to be, among other things, "to visit each year, without previous notice, each of the banks, banking corporations and saving banks, investment and loan companies, incorporated under the laws of this state, or doing business under any law of the state concerning corporations, and to examine into their affairs," etc. Foreign banking institutions doing business in this state were then, for the first time, made subject to the supervision of the state examiner.

By section 504 of the Act above, there was created the "State Examiner's Fund," and the state sought to provide for the expenses of the state examiner's office by requiring every county to pay an amount based upon the classification of the counties, and "each bank, banking corporation, savings bank, investment or loan company *incorporated under the laws of this state*" was required to pay the sum of $50, and the balance of the expenses incurred was to be paid by the state from the general fund. In order to secure the payment of the amounts apportioned among the banking institutions mentioned, there was a penalty clause added in section 505 of the Act as follows: "Any bank, banking corporation, savings bank, investment or loan company, *incorporated under the laws of this state,* that

shall fail or neglect to pay into the state treasury within ten
days from and after the first day of January of each year the
sum mentioned in the section next preceding shall forfeit to
the state ten dollars for every day it shall so fail and neglect,''
etc. It is worthy of note that, while foreign as well as domestic
banking institutions were made subject to the supervision of
the state examiner by this Act, foreign banking institutions
were not required to pay any fee into the state examiner's
fund, and were not subject to the penalty clause of the Act;
and this is so, notwithstanding the Act declares in section
504 that the purpose of creating the state examiner's fund was
''the just distribution of the expenses incurred in pursuance
of this ''tle.'' Mention is not made in this Act of either for-
eign or domestic building and loan associations.

Notwithstanding the Code provisions had been superseded by
the Act of March 18, 1895, all of the provisions of Article XI,
Chapter III, Title I, Part III, Political Code, embracing sections
490-506, were repealed by an Act of March 4, 1897 (Laws 1897,
p. 105), and in lieu of the provisions found in the Code there
was substituted the Act of 1897 above, containing sections num-
bered 490-499; but, so far as this case is concerned, no mate-
rial difference is found between the Act of 1895 and the Act
of 1897. The duties of the state examiner were enlarged some-
what and the amounts required to be paid into the state ex-
aminer's fund by the several counties changed to a certain
extent. Building and loan associations, both foreign and do-
mestic, were brought under the supervision of the state exam-
iner by the provisions of Senate Bill 64 (Laws 1897, p. 231);
and by the provisions of section 497 (page 107) of this Act of
1897 these associations are required to contribute to the state
examiner's fund. However, in the penalty clause to the Act,
no provision is made for enforcing the contributions from for-
eign building and loan associations. They are required to con-
tribute to the fund, but only ''banks, banking corporations,
savings banks, building and loan associations, investment or
loan company *incorporated under the laws of this state*'' are

made subject to the penalty, which is provided in section 498 of the Act. While from March 18, 1895, foreign banking institutions doing business in this state were subject to supervision by the state examiner, certainly no one would contend that prior to 1903 at least they were required to contribute to the state examiner's fund, or were subject to the penalties prescribed for failure to pay the fees required from domestic banking concerns.

The Act of 1897 above was amended by an Act approved March 6, 1903 (Laws 1903, p. 184). This later Act apportioned the amounts to be paid into the state examiner's fund by the banking institutions mentioned according to the amount of capital stock, but again restricted the contributors to the fund to banks, banking corporations, savings banks, investment and loan companies *incorporated under the laws of this state,* and to foreign and domestic building and loan associations; and now as if to correct the oversight in the penalty clause of the Act of 1897 above, this Act contains a penalty clause sufficiently broad in its terms to compel contributions from every institution which was required to make the same, and banks, banking corporations, savings banks, building and loan associations, investment and loan companies, incorporated under the laws of this state, or doing business under any law of this state concerning corporations, are made subject to the penalties prescribed. The phrase "or doing business under any law of this state concerning corporations" is inserted in the penalty clause for the first time. But to whom does it refer? To all foreign corporations doing business under the laws of this state? By express terms its operation is limited to only such as fail or neglect to pay the sums due as specified in the section of the Act preceding the penalty clause. From whom were the sums mentioned in the preceding section due? From "each bank, banking corporation, saving bank, investment and loan company, *incorporated under the laws of this state,*" and from foreign and domestic building and loan associations, and from no one else. It would seem perfectly clear, then, that the only

purpose of inserting the phrase above in the penalty clause of this Act was to enforce contributions from foreign building and loan associations which were likely to escape by reason of the absence of this phrase from the penalty clause of the Act of 1897 above.

When we consider that the legislature by the provisions of the Act of March 18, 1895, made both foreign and domestic banking institutions subject to the supervision of the state examiner, but only required domestic banking concerns to contribute to the expense of such supervision, and these provisions were considered by the legislature of 1897 and the same plan followed, foreign banking institutions being still exempt from the payment of the fees required of domestic banking concerns, and that these provisions of the law were again considered in 1903 and the same general plan retained, and the legislature, as if to emphasize its intention in the matter, declared again that contributions to the fund should be made by ''each bank, banking corporation, saving bank, investment and loan company, *incorporated under the laws of this state,''* and foreign and domestic building and loan associations doing business in this state, it seems impossible to reach ·any other conclusion than that foreign banking concerns doing business in this state were not intended to be included within the provisions of section 497 of the Act of 1903; and this respondent cannot, therefore, be held liable for the penalties mentioned in section 498 of that Act.

But the attorney general insists that the exemption of foreign banking concerns from the operation of the provisions of section 497 above renders the entire Act of 1903 void. Whether this result follows need not be determined. We have held that this respondent is not liable to pay the fee mentioned in section 497 above and therefore the state cannot maintain its first contention. If the entire Act is void, the state could not collect the fee from this respondent, so that no useful purpose would be served in determining whether or not this exemption of foreign banking concerns from the operation of the law invalidates

the entire Act; and following a rule universally recognized by courts we will not decide the constitutionality of a statute unless such decision is necessary to a determination of the case.

2. The state's second contention is that this respondent is subject to the provisions of the Act of the Ninth Legislative Assembly, approved March 7, 1905 (Chapter 104, p. 232, Laws of 1905). This Act is entitled "An Act regulating Foreign Corporations and Joint Stock Companies doing a Banking Business within the State of Montana, and prescribing Penalties and Punishments for Violations of the Provisions thereof." The purpose of this Act is to regulate foreign banking concerns doing business in this state. Their affairs are made subject to examination by the state examiner. They are required to make certain reports, and to pay certain fees into the state examiner's fund. Severe penalties are prescribed for the violation of the provisions of the Act. After defining foreign banking concerns as understood in the Act, section 15 contains this proviso: "Provided, that this Act shall not apply to any corporation which at the time of its approval may be openly and lawfully engaged in banking at a known and fixed place of business within this state."

It is conceded that this respondent was at the time of the approval of this Act a foreign banking corporation, openly and lawfully engaged in banking at a known and fixed place of business within this state. But the attorney general insists that this proviso is invalid as in direct conflict with section 11, Article XV, of the Constitution; and *Criswell* v. *Montana Central Ry. Co.*, 18 Mont. 167, 44 Pac. 525, 33 L. R. A. 554, is cited in support of this contention. For the purpose of this argument only, we may assume, without deciding, that this contention made by the attorney general is correct. This, then, leads to a consideration of the question: May that proviso, if invalid, be eliminated and the remainder of the Act permitted to stand in full force and effect? The result of such a holding would be to include within the provisions of the Act this respondent, which is not subject to such provisions as the Act was passed and approved.

In *Northwestern M. Life Ins. Co.* v. *Lewis and Clark County,*
28 Mont. 484, 98 Am. St. Rep. 572, 72 Pac. 982, this court
quoted with approval and designated it as an elementary rule
of law, the canon of construction in a case of this character, as
follows: ''When the valid and invalid portions of the legislative
enactment are capable of being separated, and the valid part is
a complete Act, and not dependent upon that which is void,
the latter alone will be rejected, and the rest sustained, if it is
manifest that the void part was not an inducement to the legis-
lature to pass the part which is valid; but, if it is manifest from
an inspection of the law itself that the invalid portion formed
an inducement to its passage, the entire Act will fall.'' And
in that case it was held that the invalid portion might be elim-
inated from section 681 of the Civil Code and the remaining
portion of the section be operative, and this for the reason that
it could not possibly be said that the invalid portion in any
sense formed an inducement or compensation for the enactment
into law of the provisions of the section, since the section was
merely the legislative response to a constitutional mandate.
But the decision in that case has no application here.

The legislature in this instance was not responding to any
demand of the Constitution in enacting Chapter 104 above.
May we say, then, that the legislature would have enacted the
provisions of Chapter 104 without the proviso in section 15?
In language too plain to be misunderstood the legislature in
effect said: ''We intend to form into one class foreign banking
institutions which commence business after the approval of this
Act, and everyone in that class shall be subject to the provisions
of this Act; and we intend to form another class of foreign
banking corporations, composed of those which are already in
this state doing business at a known and fixed place of business
at the time this Act is approved, and no one of that class shall
be subject to these provisions.'' The legislative intention is ex-
pressed in unmistakable language, but we are asked now to
eliminate the proviso from section 15 above, and thereby make
all the other provisions of the Act applicable alike to both

classes. Severe penalties are prescribed for a violation of the provisions of Chapter 104. The direct and immediate effect of sustaining this contention made by the attorney general, then, is to subject this respondent and other foreign banking concerns similarly situated to the penalties prescribed by the Act, a result which the legislature particularly declares was not contemplated or desired. We certainly cannot say that it is manifest that the proviso was not an inducement to the legislature to pass the Act. We cannot substitute the judgment of the court for that of the legislature as to its policy or as to the wisdom of the legislation.

Speaking of the principle for which the attorney general now contends, the supreme court of the United States, in *Spraigue* v. *Thompson,* 118 U. S. 90, 6 Sup. Ct. 988, 30 L. Ed. 115, said: "But the insuperable difficulty with the application of that principle of construction to the present instance is that by rejecting the exceptions intended by the legislature of Georgia the statute is made to enact what confessedly the legislature never meant. It confers upon the statute a positive operation beyond the legislative intent, and beyond what anyone can say it would have enacted in view of the illegality of the exceptions."

In *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 22 Sup. Ct. 431, 46 L Ed. 679, the supreme court of the United States announced the rule of construction applicable here as follows: "If different sections of a statute are independent of each other, that which is unconstitutional may be disregarded, and valid sections may stand and be enforced. But, if an obnoxious section is of such import that the other sections without it would cause results not contemplated or desired by the legislature, then the entire Act must be held inoperative."

These decisions were cited with approval by this court in *State* v. *Cudahy Packing Co.,* 33 Mont. 179, 82 Pac. 833, where it is said: "Courts may not by process of interpolation or elimination make statutory provisions apply or extend to subjects not falling clearly within their terms; for, by so doing, they

would to this extent usurp the functions of the law-making department of the government.''

This court may not, then, by arbitrarily striking out the proviso from section 15, so enlarge the scope of Chapter 104 above as to make this respondent amenable to its provisions, for such a result was plainly never contemplated by the legislature. If the proviso in section 15 is invalid, the whole of Chapter 104 must fall with it. But in any event, the state cannot maintain its second contention, for this respondent by the terms of the proviso is exempt from the provisions of the Act, while, if the Act itself is invalid, it would not be called upon to contribute anything to the state examiner's fund.

We find no error in the record. The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE MILBURN, not having heard the argument, takes no part in this decision.