TOWN OF WHITE SULPHUR SPRINGS, Plaintiff and Respondent, *v.* MILTON VOISE, Defendant and Appellant.

No. 9701.

Decided August 31, 1959.

343 Pac. (2d) 855

See **C. J. S.** Municipal Corporations § 415.

Rankin & Acher, Helena, for appellant.

No appearance on rehearing for respondent.

MR. JUSTICE ADAIR:

On defendant's timely application therefor and rehearing allowed and had, this court's former opinion and decision pronounced and filed herein on June 24, 1957, is ordered withdrawn and the following opinion and decision is substituted therefor.

This is an appeal by the defendant, Milton Voise, from an order of the District Court for Meagher County, Montana, dismissing an appeal taken by defendant from a judgment of conviction entered against him in the Police Court of the Town of White Sulphur Springs, Montana.

*The Facts.* On May 29, 1955, a complaint was filed in the Police Court of the Town of White Sulphur Springs charging that on such date Milton Voise did unlawfully violate Section 1, Ordinance 210, of the Ordinances of said Town of White Sulphur Springs in that he did then and there, on a public street of such town, drive an automotive vehicle in a reckless manner. A warrant was issued for the arrest of the defendant Voise who was immediately taken into custody, brought into the police court of the town, given a hearing whereon his bond was fixed at $250 and he was then bound over for arraign-

ment, which arraignment was had on June 2, 1955, at which time Voise entered a plea of not guilty. Thereupon his trial was set for the following day, June 3, 1955, on which date his trial was held before the police magistrate who adjudged Voise guilty of the charge and sentenced him to pay a fine of $150 and, if not paid, that Voise be committed to jail ''Laying out fine.''

Voise did not have sufficient money to pay the amount of the fine imposed whereupon he was promptly placed in jail to commence ''laying out'' his fine for a credit thereof of $2 for each day served.

On June 4, 1955, being the day following his trial and conviction, the defendant Voise, then confined and held in jail, appealed to the District Court for Meagher County, Montana, from the judgment so entered against him, by filing with Fred LaRue, the police magistrate then, and at the time of defendant's trial, presiding in said police court, a written notice of appeal, as is provided for in R.C.M. 1947, section 94-100-34, which notice of appeal said magistrate admitted in writing he received on June 4, 1955. Then, there, and thereby the District Court for Meagher County acquired full and complete jurisdiction of the appeal and of the case.

Subsequent to the filing with the police magistrate, of defendant's timely written notice of appeal, the transcript of the police magistrate's docket and the files in the case were duly lodged with the clerk of the District Court for Meagher County where the case was docketed and assigned district court No. 472.

Thereafter the district court set a definite day for hearing the case and, on February 27, 1956, being the date so set, the defendant Voise appeared in the district court by his counsel, Joseph T. Wilson, Esq. The Town of White Sulphur Springs was there represented by its attorney, George Niewoehner, Esq., who then and there filed in the office of the clerk of the district court in said cause No. 472, and served upon defendant's counsel, a typewritten motion for an order dismissing

4

defendant's appeal upon various grounds, the last whereof urges that the defendant's fine was paid in the police court and that such payment effected a waiver of defendant's appeal and rendered the cause moot in the district court.

Defendant's counsel resisted and argued against the granting of the motion to dismiss his appeal, but after hearing further argument of counsel for each party litigant, the district judge made this ruling and order, viz.:

The Court: "Let the record show that plaintiff's motion made on behalf of the Town of White Sulphur Springs in cause No. 472 to dismiss the appeal of the defendant, Milton Voise, and it appearing to the Court and the records and the files therein that the defendant was tried in the Police Court of the City of White Sulphur Springs on the charge of a misdemeanor as set forth in said complaint on the 3rd day of June 1955, on which said charge the defendant was found guilty and judgment entered that he be fined the sum of $150.00, and that the fine, if not paid, be served out under the statute, it appearing from the transcript filed in this court on the appeal that the said defendant had served ten days and been given credit on the fine of $2 per day, making a total sum of $20.00, and had also paid the sum of $130.00, thus satisfying the judgment entered in said action in said Police Court; the Court finds that the judgment in the lower court has been satisfied and the appeal abandoned, and it is ordered that the motion of the Town of White Sulphur Springs to dismiss the appeal is hereby sustained, and the appeal is accordingly dismissed for the reason that the defendant has abandoned said appeal by satisfying the judgment entered in the lower court, and that there is no legal question involved in this court, the question being moot. And now your motion is out of the way."

From the foregoing order of the district court dismissing his appeal therein, the defendant, Milton Voise, has appealed to this court.

Where, as here, the judgment of the police magistrate im-

poses a fine and orders "the defendant to be imprisoned until the fine is paid, he must be held in custody during the time specified in the judgment, unless the fine is sooner paid." R.C.M. 1947, section 94-100-40.

The defendant Voise did not have sufficient money or credit to pay the $150 fine imposed, so he was held in jail as a prisoner serving out his fine for a credit of $2 per day for each day served until such time as his credits, so earned by serving in jail, reduced the unpaid balance of his fine to the size of his purse which required serving ten days in jail for a $20 credit, at the expiration of which time he purchased his liberty by handing over to the city magistrate all his money in the sum of $130 thereby complying with the judgment entered.

On June 4, 1955, when he delivered to and filed with the police magistrate his written notice of appeal, the defendant had served but one day of his sentence for a credit of only $2 on the fine imposed, leaving an unsatisfied balance of $148 still due and unpaid.

The law says: "*All* cases on appeal from  *  *  *  police courts *must* be tried *anew* in the district court." Emphasis supplied. R.C.M. 1947, section 94-100-38.

As used by the Legislature in its above enactment, the word "*all*" means *all*; the word "*must*" means *must*, and the word "*anew*" means *anew, de novo*, from start to finish,—from beginning to end.

The district judge did not observe or follow the plain mandate of section 94-100-38. He did not try the police court case against the defendant Voise *anew* or *de novo* or at all. He was side tracked by a side issue and the defendant's case was not tried anew as is required by the statute.

On June 4, 1955, at the time he took and perfected his appeal to the district court, the defendant Voise was then in durance vile,—restrained of his liberty, and in the custody of a jailer. The appeal was timely and proper and it clothed the district court with the jurisdiction and power to try defendant's case anew.

6

The result of the appeal was to abrogate the police court's judgment. Hosoda v. Neville, 45 Mont. 310, at page 313, 123 Pac. 20, at page 21.

The district court does not, on appeal from a police court, sit as a court of review, but it tries the cause *de novo*. State v. O'Brien, 35 Mont. 482, at page 491, 90 Pac. 514, at page 516; In re Graye, 36 Mont. 394, at pages 397, 398, 93 Pac. 266; State ex rel. Borberg v. District Court, 125 Mont. 481, 240 Pac. (2d) 854, at page 861; and State v. Benson, 91 Mont. 109, 5 Pac. (2d) 1045.

In Commonwealth v. Fleckner, 167 Mass. 13, 44 N.E. 1053, Justice Oliver Wendell Holmes, speaking for the court said: "We should be slow to suppose that the legislature meant to take away the right to undo the disgrace and legal discredit of a conviction (Pub. St. C. 169, section 19) merely because a wrongly convicted person has paid his fine or served his term. The fact that no indemnity is provided by this act is far from enough to lead us to that conclusion. Of course, the payment of the fine in accordance with the sentence was not a consent to the sentence, but a payment under duress."

In Garabedian v. Commonwealth, 336 Mass. 119, 142 N.E. (2d) 777, 778, it is said:

"No contention has been made, nor could one rightly be made, that the case is moot. Although there is no way to restore time lost while serving sentence, a person is entitled to an effacement of the obloquy and stigma of an illegal conviction. [Citing cases.]"

In United States v. Morgan, 346 U. S. 502, 512, 513, 74 S. Ct. 247, 253, 98 L. Ed. 248, 253, 257, Mr. Justice Reed, speaking for the majority of the United States Supreme Court, said:

"Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected. As the power to remedy an invalid sentence exists, we think, respondent is entitled to

an opportunity to attempt to show that this conviction was invalid.''

In Village of Avon v. Popa, 96 Ohio App. 147, 121 N.E. (2d) 254, 255, 256, the court said: "No statute in this state, in terms, precludes an appeal from a final order of conviction of a criminal offense in which an imposed penalty has been satisfied, whether voluntarily or involuntarily. * * * Certainly an erroneous judgment of conviction of a criminal offense against a man is an injury per se, 'from which the law will intend he is or will be damnified by its continuing against him unreversed.' [Citing cases.] * * *

''While we might base our decision in the instant case on the ground that the fine was involuntarily paid because there had been no suspension of the execution of the sentence, and therefore, the defendant was liable to damage, pursuant to the legal processes of collection if he failed to pay, we prefer to base it on another ground—to wit, that there is nothing in the record indicating that the defendant intended to abandon his right to appeal, except possibly an inference arising from the mere fact that he paid his fine and costs. Contradicting an inference of abandonment or waiver from the payment of the fine and costs, stand the facts that, before and after the payment, he meticulously pursued the procedural steps requisite to appeal, which clearly indicate that he intended to proceed into the appellate court and not abandon or waive his right to appeal. Under such circumstances, a court cannot presume a waiver of appeal from the payment of a fine and costs alone, when the actions of the defendant affirmatively show no such intention.

''If the actions of a defendant are open to two constructions, a court should not presume a waiver on his part. In the case before us, we think the facts clearly show no intention of the defendant to waive his appeal nor to abandon his right to further litigate.

''In answering a claim that, after the payment of a penalty

imposed, the matter becomes moot, we refer to the statement of Holmes, J., set out above. The disgrace and legal discredit remain. It would seem that, in holding the matter moot, we are forgetting the public morals and citizenship aspects of a criminal conviction; that we are placing a criminal case in the same category as a civil case. The claim of moot we believe to be untenable.''

People v. Shambley, 4 Ill. (2d) 38, 122 N.E. (2d) 172, 173, held that the voluntary payment of the assessed fine by a defendant convicted of assault with a deadly weapon did not constitute a waiver of defendant's right to have the case reviewed on appeal.

People v. Chamness, 109 Cal. App. Supp. 778, 780, 288 Pac. 20, 21, held, that by the payment of a fine assessed against him to escape a jail sentence the defendant in a criminal case did not waive his right to appeal. There the appellate court said:

''We are satisfied that a defendant convicted of a criminal offense and faced with a term in jail, unless he pays a fine, does not by paying the fine waive his rights to appeal. There is no basis in fact for the contention that he waives his appeal, for the thing done bears no inconsistent relation to the thing to be done, so there is not factually an election. Nor is the one step a relinquishment of the right to pursue the other by virtue of any statute or written rule of court. * * * It is to substitute fantasy for fact to say the defendant's real interest in the case ceases with the payment of the fine. Is a good name no longer to be chosen rather than riches? Is a question alive so long as the payment of $100 is involved, but moot when only the matter of a besmirched name remains?''

In Barthelemy & De Bouillon v. People, 1842, 2 Hill, N. Y., 248, 255, 256, the court, considering two convictions for criminal libel, said: ''But the payment or satisfaction of an erroneous judgment against a party, can never be allowed as a bar to a writ of error, even in a case where we must see that no restitution could follow the reversal as a legal consequence,

and no costs be recovered. An erroneous judgment against him is an injury *per se,* from which the law will intend he is or will be damnified by its continuing against him unreversed * * * but a judgment on the merits is conclusive between the parties, and, if not by direct, it may be followed by remote consequences actually injurious."

In Johnson v. State, 172 Ala. 424, 430, 55 So. 226, 228, Ann. Cas. 1913E, 296, a judgment of conviction was entered against the defendant and a fine of $50 assessed in a jury's verdict finding him guilty of the crime of selling intoxicating liquors contrary to law. The defendant in open court paid the fine and costs and was thereupon discharged from custody. The defendant then appealed from the judgment whereupon the state moved to dismiss the appeal contending that the payment of the fine followed by the order discharging defendant from custody was a waiver of defendant's right of appeal or a release of errors. In holding that such satisfaction of the judgment did not constitute a waiver of defendant's right of appeal the court said:

"Although there are a few cases to the contrary, the rule is nearly universal in civil cases that mere payment of a judgment, or obedience to the mandate of the court, works no waiver of the right of appeal, and so this court has held. * * *

"We can discover no valid reason for a different result in criminal cases. The assumption in State v. Westfall [37 Iowa 575] supra, and other cases, that a convicted defendant, who is ordered to be committed to jail, unless the fine and costs be paid or secured, and, under that threat from a *valid judgment,* pays the penalty assessed, does so *voluntarily,* is but a grim form of jesting, and utterly at war with the generally accepted notion of the meaning of that term. * * *

"Nor do we conceive that the supposed inability of the defendant to recover, after reversal of the judgment, the sum paid by him for its satisfaction, as is predicated in some of the cases under criticism, is a matter of vital importance. Whether or not the defendant in this case might, by order of restitution,.

or by any other legal remedy, recover the money he has paid is a question which is not before us, and which we need not now consider. The right to appeal and reverse an erroneous judgment in a criminal case cannot, we are satisfied, be grounded solely on that consideration.''

In Roby v. State, 96 Wis. 667, 670, 71 N. W. 1046, 1047, the court said: ''It appears by the record that the plaintiff in error was sentenced to one year's imprisonment in May, 1896, and consequently that his term must now have expired. This fact, however, makes no difference with the disposition of the case. A person convicted of crime may prosecute his writ of error while serving his sentence, and the fact that he may serve out his entire sentence before the decision of his case does not affect his right to a reversal of the judgment if it be erroneous. The mere payment of a judgment in a civil cause does not operate to bar or waive the right to appeal therefrom (Sloane v. Anderson, 57 Wis. 123, 13 N. W. 684, and 15 N. W. 21), and for stronger reasons the compulsory working out of a judgment in a criminal case does not debar a man from obtaining a reversal of an erroneous conviction, and thus removing the stigma which wrongly rests on his name and reputation.''

The case of In re Lincoln, 102 Cal. App. 733, 736, 283 Pac. 965, 968, was an appeal from an order suspending an accused attorney from the practice of his profession for one year. The question presented was the right of the court to reverse the order after the year had expired. In holding that the right of appeal was not foreclosed the court said:

''If it be true that one who has been found guilty of a criminal offense and has satisfied the judgment by payment of the fine or suffering a term of imprisonment may yet be entitled to be relieved of the odium and disgrace of the wrongful conviction, it must be equally, if not more, just to remove from the name of a member of the ancient and honorable profession of the law the stain of a judgment which brands him as unfaithful to the trust reposed in him. There is no asset to be possessed by the

lawyer so dear or so valuable as his known character, or reputation for honesty, integrity, and sincerity of purpose. When it is wrongfully assailed, he is damaged, not only in the finer sensibilities, but also in a financial measure impossible to accurately estimate. We hold to the opinion that the appellant should not be foreclosed of his right to remove this blot upon his record, if in fact he was wrongfully convicted, by the situation forced upon litigants by the congested condition of the calendar, thus rendering it impossible to determine the appeal until after the period of suspension had expired."

In State v. Jacobson, 348 Mo. 258, 262, 152 S. W. (2d) 1061, 1064, 138 A.L.R. 1154, the court said:

"As to the proposition that the questions involved have been rendered moot by reason of the pardon, it may be said that the situation is not wholly unlike that presented where a defendant has served his sentence before the determination of his appeal. The weight of authority seems to be that this makes no difference, and does not affect his right to prosecute the appeal. [Citing cases.] Such procedure accords with our own practice, as is common knowledge. [Citing case.]

"Under the circumstances outlined, it seems clear that an accused is entitled to an opportunity, in the same judicial proceeding, to remove the discredit and stigma flowing from the judgment of conviction, notwithstanding the conviction may no longer be regarded as subsisting. The fact that he was convicted remains. In this connection it may not be amiss to observe that should defendant ever be so unfortunate as to be again charged with a crime punishable by imprisonment in the pentitentiary, he would upon conviction, be subject to the more severe penalties prescribed by our habitual criminal statute. Section 4461, R. S. '29, section 4461, Mo. St. Ann. page 3063. By its very terms it is made applicable to subsequent offenders who shall have been previously 'discharged, either *upon pardon* or upon compliance with the sentence' (Italics ours). There is still a substantial element of

controversy existing, and the state's motion to dismiss should be overruled. It is so ordered."

Also see: Fiswick v. United States, 329 U. S. 211, 67 S. Ct. 224, 91 L. Ed. 196; Burris v. Davis, 46 Ariz. 127, 46 Pac. (2d) 1084, 1086; State v. Dawn, 41 Idaho 199, 239 Pac. 279; Weaver v. Kimball, 59 Utah 72, 202 Pac. 9.

Serious consequences attend the conviction of driving an automotive vehicle on a public street in a reckless manner. To continue to drive an automotive vehicle the driver is required to have a driver's license. R.C.M. 1947, section 31-135.

The law also requires that the conviction be reported.

R.C.M. 1947, section 31-145, subd. (b) and (c) provides:

"(b) Every court having jurisdiction over offenses committed under this act, or any other act of this state or municipal ordinance regulating the operation of motor vehicles on highways, shall forward to the board a record of the conviction of any person in said court for a violation of any said laws other than regulations governing standing or parking, and may recommend the suspension of the operator's or chauffeur's license of the person so convicted.

"(c) For the purposes of this act the term 'conviction' shall mean a final conviction. Also, for the purposes of this act a forfeiture of bail or collateral deposited to secure a defendant's appearance in court, which forfeiture has not been vacated, shall be reported to the board by the court having jurisdiction."

R.C.M. 1947, section 31-141, provides:

"(a) The board shall file every application for a license received by it and shall maintain suitable indexes containing, in alphabetical order:

"1. All applications denied and on each thereof note the reasons for such denial;

"2. All applications granted; and

"3. The name of every licensee whose license has been suspended or revoked by the board and after each such name note the reasons for such action.

"(b)  The board shall also file all accident reports and abstracts of court records of convictions received by it under the laws of this state and in connection therewith maintain convenient records or make suitable notations in order that an individual record of each licensee showing the convictions of such licensee and the traffic accidents in which he has been involved shall be readily ascertainable and available for the consideration of the board upon any application for renewal of license and at other suitable times."

R.C.M. 1947, section 31-147, in part, provides:

"(a)  The board is hereby authorized to suspend the license of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee:  *  *  *

"3.  Has been convicted with such frequency of serious offenses against traffic regulations governing the movement of vehicles as to indicate a disrespect for traffic laws and a disregard for the safety of other persons on the highways;

"4.  Is an habitually reckless or negligent driver of a motor vehicle;

"5.  Is incompetent to drive a motor vehicle."

Thus a conviction on a charge of reckless driving becomes a permanent record with the Montana highway patrol board and unless the judgment of conviction be reversed or set aside it could involve numerous future penalties.

R.C.M. 1947, section 94-7819 provides:

"A judgment that the defendant pay a fine or costs constitutes a lien upon the real estate of the defendant, which lien dates from the date of the defendant's arrest."

R.C.M. 1947, section 94-7818, provides:

"Whenever any defendant is committed to jail for the failure to pay any fine and costs adjudged against him, and has failed to prove to the satisfaction of the court, or judge thereof, that he is unable to pay the same, or any part thereof, the court must order that he be discharged from custody when he has

served one day for every two dollars of such fine and costs; *but this does not discharge the judgment for fine and costs, which may, at any time thereafter within the time limited by law, be collected upon execution issued thereon.*" Emphasis supplied.

In the instant case, had defendant served the entire 75 days in jail in lieu of paying any part of the fine assessed against him, it would not necessarily follow that he would have thereby discharged the obligation to pay the fine imposed. Notwithstanding having served the entire period of 75 days still the sheriff could have seized and sold under execution sufficient of defendant's property to pay the fine. With such questions, obligations and penalties still confronting him defendant's appeal to the district court did not and has not become moot.

Ordinance—210. The complaint upon which the defendant was tried charges that on the date named the defendant did "unlawfully violate the provisions of Section 1, Ordinance 210, of the Ordinances of said Town of White Sulphur Springs." Such Ordinance reads:

"Ordinance No. 210

"An Ordinance of the Town of White Sulphur Springs, Montana, Adopting State Laws Defining Misdemeanors When Offenses are Committed Within Said Town, or Within the Police Jurisdiction Thereof, and in Effect Making State Laws so Adopted Town Ordinances of Said Town, Subject to the Maximum Penalties Provided by Section 11-950, Revised Codes of Montana 1947, and Declaring an Emergency.

Be It Ordained by the Council of the Town of White Sulphur Springs, Montana:

"Section 1. Any person, firm, corporation or association committing acts in the Town of White Sulphur Springs, or within the police jurisdiction thereof, not specifically declared to be an offense by other ordinances, but which are declared to be a misdemeanor by any law or laws of the State of Montana, shall upon conviction thereof suffer the same punishment

as is provided by the state law, but subject to the maximum penalties provided in Section 11-950, Revised Codes of Montana 1947, and the prosecution of such offenses so committed may be had before the police magistrate. It being the intention of this ordinance to adopt all such state laws defining misdemeanors except where the subject is otherwise specifically covered by town ordinances, and in effect make them town ordinances with like force and effect as if they were each enacted as separate ordinances, but with the penalties limited as provided in Section 11-950, Revised Codes of Montana 1947.

"Section 2. Whereas the peace, health and safety of the citizens of the town are presently endangered by various and sundry acts declared to be offenses by state laws covering misdemeanors, but without town ordinances covering the same, and it is necessary to bring the punishment of said offense within the jurisdiction of the town and the police magistrates thereof in order to preserve the peace, health and safety of said citizens, and this ordinance is needed immediately, it is hereby found and declared that an emergency exists, and this ordinance shall go into effect immediately.

"Passed and approved this 8th day of January, 1952, by more than a two-thirds vote of all the councilmen elected."

R.C.M. 1947, section 11-1102, reads:

"Ordinances—how prepared. All ordinances, by-laws, and resolutions must be passed by the council and approved by the mayor, or the person acting in his stead, and must be recorded in a book kept by the clerk called 'The Ordinance Book,' and numbered in the order in which they are passed, and take effect from and after their passage, except as otherwise ordered, and *no ordinance shall be passed containing more than one subject, which shall be clearly expressed in its title,* except ordinances for the codification and revision of ordinances." Emphasis supplied.

It is quite apparent that in passing Ordinance No. 210, supra, the town's council was neither intending nor attempting to

either codify or revise the town's ordinances. Thus did Ordinance No. 210 come squarely within the statutory prohibition that *"no ordinance shall be passed containing more than one subject, which shall be clearly expressed in its title."* Section 11-1102, supra.

The clear and expressed intent of the town's council in passing the ordinance (except only where the subject is otherwise specifically covered by town ordinances), was to adopt in this one Ordinance No. 210, all the statutes of Montana defining or relating to crimes of the grade of misdemeanors *"and in effect make them town ordinances with like force and effect as if they were each enacted as separate ordinances,* but with the penalties limited as provided in section 11-950, Revised Codes of Montana 1947."

Here the town's council attempted to pass one lone ordinance whereby it would adopt and ''pack-pot'' several hundred state statutes defining, punishing, or otherwise relating to innumerable misdemeanors contained in various of the nine volumes of the Revised Codes of Montana of 1947 with no description, designation or even mention made in the title of the town ordinance as to the section numbers of the statutes or the misdemeanors or the subjects sought to be adopted or included in the ordinance.

Misdemeanors, under the Revised Codes of Montana of 1947, include an extremely wide variety of subjects, acts, practices, conduct and behavior. To name but a few, the following are misdemeanors, under the laws of our state, viz.: to sell intoxicating liquor to anyone under 21 years of age (section 94-35-106); to let a building for lottery purposes (section 94-3009); to permit minors in pool or billiard halls (section 94-4004); to sell tobacco to a minor (section 94-35-208); false advertising (section 94-1820); to pay women less than men for equivalent services (section 41-1307); to disturb a religious meeting (section 94-3561); to exhibit moving pictures of crimes (section 94-3573); to drive a motor vehicle without proper licenses or

permits; to drive an automotive vehicle in a reckless manner; to violate the state income tax law. All such varied acts are misdemeanors under the Codes of this state, and in passing the one Ordinance No. 210, covering all these subjects, the town's council attempted to adopt all the sections of our Codes governing such numerous and varied subjects, none of which are mentioned in the title of the ordinance.

By its enactment of section 11-1102, supra, the Legislature placed practically the same restrictions upon city and town councils as are imposed upon the Legislature itself by section 23 of Article V of the Constitution of Montana which reads:

"Section 23. No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

In State v. Brown, 29 Mont. 179, 207, 74 Pac. 366, in reversing a judgment of conviction for unlawful shooting and killing a turtle dove in violation of a statute known as Senate Bill No. 29, Laws of 1903, Chapter 58, entitled:

" 'An Act to repeal Sections 1110, 1111, 1112, 1113, 1114, 1115, 1116, 1117, 1118, 1119 1120, 1121, 1122, 1123, 1124, 1125, 1126, 1127, 1128, 1129, 1130, 1131, 1132, 1133, 1134, 1135, 1136, 1137, 1138, 1139, 1140, 1141, 1142, 1143, and 1144, of the Penal Code of the State of Montana, and to provide further protection for birds, fish, fur bearing animals and game,' approved March 8, 1897, as amended by House Bill No. 13, Session of 1901, approved March 14, 1901" this court said:

"It is apparent from the foregoing that Senate Bill No. 29 has no title at all. It is simply a quotation of part of the title of House Bill No. 13 and all of the title of House Bill No. 123. * * * The title did not direct attention truly to the matter which was to be legislated upon. * * * As is said

in State v. Anaconda Copper-Mining Co., 23 Mont. 498, 59 Pac. 854, the constitutional provision 'is to restrict the Legislature to the enactment of laws the objects of which legislators and the public as well may be advised of, to the end that any who are interested, whether as representatives or those represented, may be intelligently watchful of the course of the pending bill. The limitation is likewise designed to prevent legislators and the people from being misled by false or deceptive titles, and to guard against fraud in legislation by way of incorporating into a law provisions concerning which neither legislators nor the public have had any intimation through the title read or published.' [Citing cases.] Defendant's contention that Senate Bill No. 29 is unconstitutional must therefore be sustained.

"* * * It follows that the complaint does not state a public offense."

In Lewis and Clark County, Montana, one W. R. Holland was charged and convicted of a misdemeanor in that he wore upon the lapel of his coat an elk head emblem knowing it to be the emblem and insignia of the Benevolent and Protective Order of Elks of the United States of America, of which he was not a member, all in violation of Section 1192 of the Penal Code of Montana, Session Laws of 1907 at page 24. In an opinion reversing the judgment of conviction and holding the statute to be indefinite, subversive of our Constitution and principles of government and therefore void, Chief Justice Brantly, in speaking of the statute said: "It is impossible for a citizen upon reading the text of it to determine when he is subject to its penalties." State v. Holland, 37 Mont. 393, 404, 96 Pac. 719, 722.

In State v. Lutey Bros., 55 Mont. 545, at pages 552, 553, 179 Pac. 457, at page 458, this court said:

"The fundamental policy of the act is to regulate the giving of premiums or bonuses. The language employed in section 1, however, is so worded and contains so many meaningless words

and phrases that it all but defies analysis. Its title is open to even more severe criticism in that respect. * * *

"An offense is not punishable unless it falls within the condemnation of some penal statute. If it is not plainly and specifically within the act, it is not against law, and no conviction can be had thereunder. Its provisions are not to be extended by implication, and the act charged as an offense must be unmistakably within the letter as well as the spirit of the law. * * * Penal statutes are not to be extended by implication beyond the legitimate import of the words used in them so as to embrace cases or acts not clearly described by such words. 26 Am. & Eng. Ency. of Law, 657; State v. Aetna Banking & Trust Co., supra [34 Mont. 379, 87 Pac. 268]."

In H. Earl Clark Co. v. Public Service Comm., 94 Mont. 488, 501-503, 22 Pac. (2d) 1056, 1059, this court said:

"The plaintiff complains that, because of the deficiencies and ambiguities of the act, by every sale it makes, potentially it commits a criminal offense and furnishes the basis for a civil action against it; that there is no standard of criminality or civil conduct provided in the act by which it can determine whether or not its sales, necessarily different throughout its wide field of activity, violate the act. These assertions have merit.

"Boiled down, this act says to the well-meaning citizen: It is true that you may lawfully sell gasoline at different prices to different persons in different parts of the state, but if you do you may be charged with a crime, arrested, and brought to trial. A case will be made out against you by proof of the fact that you did sell gasoline to different persons at different prices, as charged. You may exculpate yourself by showing you were *justified* in charging the difference, and will be permitted to resume your liberty. The humiliation suffered by yourself and family, and the vexation and expense to which you have been put, you must attribute to the law which has victimized you in an effort to see that somebody else is not cheated.

20

"To sum up, it is impossible for a citizen, engaged in the business of selling a standard petroleum product, upon reading the text of the act, to determine when he is subject to penalties. State v. Holland, 37 Mont. 393, 96 Pac. 719. ' "Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts * * * to avoid." United States v. Brewer, 139 U. S. 278, 11 S. Ct. 538, 35 L. Ed., 190. "In order to constitute a crime, the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty." Tozer v. United States, C. C., 52 F. 917. "If the legislature undertakes to define by statute a new offense, and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime." United States v. Reese, 92 U. S. 214, 23 L. Ed. 563.' Burk v. Montana Power Co., 79 Mont. 52, 255 Pac. 337, 339.

" 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' Connally v. General Construction Co., 269 U. S. 385, 46 S. Ct. 126, 127, 70 L. Ed., 322.

" 'The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain founda-

tion. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another.' United States v. Capital Traction Co., 34 App. D. C. 592, 19 Ann. Cas. 68.''

Furthermore R.C.M. 1947, section 94-100-46, provides:

''All fines imposed and collected by any court, under the provisions of this chapter, must be paid by him to the treasurer of the county, *city, or town,* according as the offense is prosecuted in a justice or *police court,* within thirty days after the receipt of the same, and the justice or police judge must take duplicate receipts therefor, one of which he must deposit with the county, city, or town clerk, as the case may be.'' Emphasis supplied.

There is no statute in Montana giving a town or city council authority to repeal a statute of the state. To hold the town's Ordinance No. 210 to be valid would, in effect, be to repeal the provisions of section 94-100-46, supra. By such ordinance the town sought to make any person committing in said town any act constituting a misdemeanor under the statutes of Montana to also be guilty of violating such ordinance.

In City of Billings v. Herold, 130 Mont. 138, 153, 296 Pac. (2d) 263, 270, this court, in holding an ordinance of the city invalid, said:

''In Jenkins v. Jones, 209 Ga. 758, at pages 759, 760, 75 S.E. (2d) 815, at page 817, the court said: '* * * Where a municipal ordinance and a public criminal statute operate upon the same state of physical acts, the ordinance is invalid unless the offense created thereby contains some characterizing ingredient not contained in the State offense. [Citing cases.] A municipal ordinance punishing an act made penal by a State law then existing, covering the same subject matter, must yield

22

to the State law. [Citing case.] "Where both the ordinance and the state law exist, covering the same act and same offense, the offender cannot be put in jeopardy twice for the same offense under the ordinance and under the state law. In such case he could only be punished for a violation of the state law." Mayo v. Williams, 146 Ga. 650, 652, 92 S.E. 59, 60.' Also see Commonwealth of Pennsylvania v. Nelson, 350 U. S. 497, 76 S. Ct. 477, 100 L. Ed. 640.

"In the instant case the state acting through its legislature has plenary power over the streets and highways of the state 'whether within or without a municipality.' * * * The city was without the essential authority or power to pass or adopt the ordinance. Such ordinance is therefore void and the trial court was without jurisdiction of the appellant or the subject matter. [Citing cases.]

"The appellant should have been charged and prosecuted under the valid enactments of the legislature. He may not be prosecuted under the invalid city ordinance and his timely challenges to the complaint and to the jurisdiction of the lower courts to prosecute or try him under the ordinance should have been allowed.

"Accordingly the judgment of the district court is reversed and the complaint is dismissed."

In the instant case Ordinance No. 210 of the Town of White Sulphur Springs is violative of the prohibition set forth in R.C.M. 1947, section 11-1102, hence it is null, void and of no effect. The defendant's challenges to the complaint and to the jurisdiction of both the police court and the district court to prosecute or try him under the town's Ordinance No. 210 should have been sustained and allowed. The district court's order dismissing defendant's appeal is reversed and set aside. The judgment of conviction entered in the police court is declared. null and void and it is reversed and vacated and the cause is remanded to the district court with directions to cause proper entries to be made therein showing that this action was prose-

cuted under a void ordinance and that the judgment of conviction entered therein was and is void *ab initio*.

MR. JUSTICE BOTTOMLY, concurs.

MR. JUSTICE ANGSTMAN:

I agree with the result attained, but not with all that is said in the foregoing opinion.

THE HONORABLE ERNEST E. FENTON, District Judge (sitting in place of MR. JUSTICE CASTLES):

I concur in the result, but not with all that is said therein.

MR. CHIEF JUSTICE HARRISON:

I concur insofar as the opinion holds Ordinance 210 of the Town of White Sulphur Springs to be null and void, and in the reversal of the judgment upon such ground. As to that portion of the opinion which holds that voluntary payment of a fine does not constitute a termination of the action and preclude a review of the conviction, I dissent for the reason that, in my opinion, it is minority view among courts of last resort, the majority of which hold to the contrary. See annotations 18 A.L.R. 867, 74 A.L.R. 638, and subsequent cases.