Argued April 22, reversed May 13, 1971

IN THE MATTER OF JAMES ERIC VAN TASSEL, ALLEGED
TO BE A MENTALLY ILL PERSON

STATE OF OREGON, *Respondent, v.*
JAMES ERIC VAN TASSEL, *Appellant.*

484 P2d 1117

*Robert L. Haskins,* Portland, argued the cause and filed the briefs for appellant.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

SCHWAB, C. J.

The defendant, Van Tassel, appeals from an order made in a proceeding under ORS 426.070 through 426.170, adjudicating him to be a mentally ill person and committing him to the Oregon State Hospital, Salem, on the ground that the judicial proceeding which resulted in this order did not follow the requirements of ORS 426.070 in so far as it requires:

"The judge * * * upon being notified in writing under oath by two persons * * * that any other person within the county is mentally ill and by reason of such illness is in need of treatment, care or custody, shall cause the allegedly mentally ill person to be brought before him at such time and place as he may direct * * *."

On August 7, 1970, the defendant was an inmate of the Multnomah County jail. On that date a Notice of Mental Illness was filed alleging defendant to be a mentally ill person and, by reason of such illness, in need of treatment, care or custody. This Notice of Mental Illness was sworn to and signed by two men,

Doyle and Edmonds. It consisted of a standard typed form with spaces for insertion of the name of the person alleged to be mentally ill, and the reasons why the person alleged to be mentally ill was thought to be mentally ill. In the latter space, following the typed word "because," there followed a handwritten summary of Doyle's observations, written in the first person, of an interview of defendant which Doyle conducted. Edmonds was not present at the interview.

On August 13, 1970, defendant filed a motion in the nature of a demurrer to dismiss the proceeding on the ground that the court did not have jurisdiction. The motion was based on the attached affidavit of Edmonds. In the affidavit Edmonds stated that Doyle composed the notice, that Edmonds was not present during the interview, that the observations did not represent Edmonds's observations, that Edmonds had only very limited contacts with defendant and that although Edmonds signed the Notice of Mental Illness, he did not have any basis for believing, and did not believe, defendant to be mentally ill. The court denied the motion.

On August 14, defendant filed a petition for withdrawal of Notice of Mental Illness. This document, also in the form of an affidavit, was executed by Edmonds and purported to withdraw the Notice of Mental Illness which he had previously executed. The court gave no effect to this petition.

On August 14, 1970, the court and the appointed panel of physicians each, after hearing, found defendant to be mentally ill and in need of treatment, care or custody, whereupon the court ordered that defendant be committed to the Oregon State Hospital, Salem, Oregon. He was committed and on that date filed his notice of appeal to this court.

On September 5, 1970, defendant was released from the Oregon State Hospital as competent, pursuant to ORS 426.300.

While this appeal was pending and after the defendant had been released as competent, the state moved to dismiss the appeal as moot. We denied the motion.

■ Before dealing with the question of the validity of the commitment procedure we discuss the question of mootness. In so doing, we borrow in large part from the brief submitted by defendant's counsel.

The question of mootness is basically a policy question. The concern of the courts in the past has been about hearing cases which present abstract questions. *People v. Chamness*, 109 Cal App 778, 1 Cal Supp 69, 288 P 20, 21 (1930). For example, traditionally courts have considered that when a criminal defendant had fully served his sentence neither party any longer had sufficient interests in the controversy to assure adequate representation of the issues. Consequently, the court would be faced with an abstract question to decide. Hence, the traditional view considered all such appeals as moot and refused to hear them.

The traditional view has given way in some jurisdictions to the view that, when a conviction has collateral effects in addition to merely fining or confining the defendant, the case is not moot on appeal even after the defendant has served the sentence or paid the fine. The collateral effects give the defendant sufficient interest to assure adequate representation of the issues and presentation of a concrete question for decision.

In the case of *White Sulphur Springs v. Voise*,

136 Mont 1, 343 P2d 855 (1959), the defendant was convicted of reckless driving and fined $150. He paid $20 by serving 10 days in jail at a $2 per day credit and paid the other $130 in cash. He appealed the decision. It was contended that the payment of the fine in full by cash and by serving the 10 days made the appeal moot. The court held that the appeal was not moot because, *inter alia*, the conviction *might* result in the suspension of his driver's license.

In *Davis v. District of Columbia*, 91 A2d 14, (DC Mun Ct App 1952), a taxicab driver was convicted of failing to yield a right-of-way to pedestrians in a crosswalk. He was fined. He paid the fine and appealed. On appeal, the court held that, due to the fact that the conviction imposed upon him certain burdens and disabilities, i.e., made him subject to suspension of his hacker's license, the appeal was not moot.

Defendant, in the case at bar, is subject to a potential financial liability for his commitment. Under Oregon laws he may be ordered by the Institutional Services Division (now called Institutional Reimbursement Unit) of the Executive Department, or the Mental Health Division, of the State of Oregon, to pay for the care and maintenance he received while in the custody of the Oregon State Hospital. ORS 179.640(1), (2); ORS 426.240(2); and ORS 427.055. This order may be enforced under the provisions of ORS ch 23 after a show cause hearing by the county probate court having jurisdiction. ORS 179.640(4), (5) and (6). An order by the Court of Appeals in the case at bar voiding the commitment proceedings would remove the basis for imposing such a liability on defendant and would afford him some real relief.

In the analogous area of criminal law, when a

sentence has been served, or a fine paid in full, prior to a decision being rendered on appeal, and where the conviction has collateral effects, courts hold that such a case is not moot. *Ginsberg v. New York*, 390 US 629, 633, n 2, 88 S Ct 1274, 20 L Ed 2d 195, *rehearing denied*, 391 US 971, 88 S Ct 2029, 20 L Ed 2d 887 (1968) (collateral effects of conviction were " 'the possibility of ineligibility for licensing under state and municipal license laws regulating various lawful occupations' ") ; *Street v. New York*, 394 US 576, 580, n 3, 89 S Ct 1354, 22 L Ed 2d 572 (1969) (collateral effects of malicious mischief conviction in which sentence was suspended were (1) that defendant's employer had instituted disciplinary proceedings against him based on the conviction which might have resulted in fining or temporarily suspending defendant without pay, and (2) the conviction would be available for use to impeach defendant's credibility, and for sentencing purposes, in future court cases) ; *Dancy v. United States*, 124 App DC 58, 361 F2d 75, 79 (DC Cir 1966) (collateral effect was statutory deprivation of specific civil rights) ; *Rosenau v. District of Columbia*, 147 A2d 445, 447 (DC Mun Ct App 1959) (collateral effect of conviction was serious possibility of the defendant's being extradited as a parole violater) ; *Tatum v. United States*, 88 A2d 495 (DC Mun Ct App 1952) (collateral effect of conviction was revocation of parole stemming from another conviction) ; *White Sulphur Springs v. Voise*, supra ; *Davis v. District of Columbia*, supra.

Courts throughout the country have modified the traditional view in a manner which is actually only a logical extension of the collateral effects doctrine. This approach recognizes in effect that injury to reputation resulting from a criminal conviction is a collateral effect of the conviction and as such pro-

vides the defendant a sufficient interest to assure the court adequate representation of the issues and presentation of a concrete, nonabstract case. Hence, this doctrine holds that such cases are not moot.

The United States Supreme Court, although professing to follow the collateral effects doctrine, has, in effect, cast it aside following the enlightened view. In *Sibron v. New York*, 392 US 40, 88 S Ct 1889, 20 L Ed 2d 917 (1968), the court traced the history of the collateral effects rule in the Supreme Court. The court stated that in 1957 "* * * the Court abandoned all inquiry into the actual existence of specific collateral consequences and in effect presumed they existed." 392 US at 55. The court continued:

"* * * '[t]he possibility of consequences collateral to the imposition of sentence is sufficiently substantial to justify our dealing with the merits.' * * * The Court thus acknowledged the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences * * *." 392 US at 55.

The court went on to state that the conviction in question could be used against the defendant in the future to impeach his character and for sentencing purposes and assumed there were more adverse effects. 392 US at 55, 56. The court mentioned another requirement under the collateral effects rule—that of diligence in proceeding in the appeal, i.e., whether the person could diligently have brought the case before the court in question before the expiration of sentence. 392 US at 51. (In the case at bar, no extensions have been requested by either party.) Finally, the court held that "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the chal-

lenged conviction." 392 US at 57. The case of *Byrnes v. United States*, 408 F2d 599, 601 (9th Cir), *cert denied* 395 US 986, 89 S Ct 2142, 23 L Ed 2d 775 (1969), expressly followed the *Sibron* case and assumed rather than required a showing of collateral effects.

The Oregon Supreme Court has not rigidly followed the traditional view. *Huffman v. Alexander*, 197 Or 283, 251 P2d 87, 253 P2d 289 (1953), was a habeas corpus case. On rehearing after the first decision was written, the Supreme Court was informed that the defendant was discharged from custody prior to issuing its first decision. Instead of dismissing the case as moot, the Supreme Court, because of the public importance and public interest in the question, decided the issue presented, i.e., whether habeas corpus was the proper remedy. The public importance and public interest involved was the value of the case as precedent for guidance of future petitioners.

In *State v. Lincoln*, 5 Or App 138, 483 P2d 92 (1971), which dealt solely with the question of the length of a criminal sentence which had already been completed, this court said:

> "In spite of this development, if this appeal was from the original judgment perhaps we should entertain the appeal to give the defendant the opportunity on appeal to seek to clear himself from the stigma of a conviction for a felony * * *."

The law has long recognized the substantial interests that a person has in his reputation. Libel and slander have long been tortious—political libel also being a Star Chamber crime. Prosser, Torts 754, 755 § 106 (3d ed 1964). The Oregon legislature has recognized the substantial interest a criminal defendant has in his reputation by providing in ORS 138.560 (3) that

in a post-conviction proceeding to review a felony conviction "the release of the petitioner from imprisonment during the pendency of proceedings instituted by him pursuant to ORS 138.510 to 138.680 shall not cause the proceedings to become moot." ORS 138.510 to 138.680 are the post-conviction relief provisions. These were enacted in Oregon Laws 1959, ch 636, p 1311, and are the "* * * exclusive means, after judgment rendered upon a conviction for a crime, for challenging the lawfulness of such judgment or the proceedings upon which it is based." ORS 138.540 (1).

Other jurisdictions have recognized that a defendant's interest in his reputation is a sufficient interest to defeat a mootness argument when his appeal or other proceeding for review has not been decided by the time he has served his sentence, or paid his fine. In *Commonwealth v. Fleckner*, 167 Mass 13, 15, 44 NE 1053 (1896), Mr. Justice Oliver Wendell Holmes stated:

> "* * * We should be slow to suppose that the Legislature meant to take away the right to undo the disgrace and legal discredit of a conviction * * *, merely because a wrongly convicted person has paid his fine or served his term * * *."

In *In re Byrnes*, 26 Cal2d 824, 828, 161 P2d 376 (1945), the court stated that the question presented was not moot because the petitioner was entitled "to an appeal from such judgments for the purpose of clearing his name * * *."①

---

① Cf. State v. Superior Court of Maricopa County, 93 Ariz 351, 355, 380 P2d 1009, 1011 (1963); Jackson v. People, 151 Colo 171, 175, 376 P2d 991 (1962); People v. Williams, 4 Ill App2d 506, 514, 124 NE2d 537 (1955); Garabedian v. Commonwealth, 336 Mass 119, 120, 142 NE2d 777 (1957); State v. Winthrop, 148 Wash 526, 269 P 793 (1928).

The criminal and contempt cases referred to in n 1 provide strong analogy to the case at bar. In both types of cases and in the case at bar, the subject was involuntarily committed to the custody of the state. In both, a social stigma attaches which affects the person's reputation and earning potential. Although ORS 426.160 does put limits on the availability of the judicial record of commitment, it is no secret that defendant was committed to the Oregon State Hospital in Salem, Oregon. Furthermore, inquiry into a person's history of mental health by, for example, a prospective employer or bonding agency, would be legitimate. ORS 426.160 would not prohibit defendant from disclosing anything contained in the court record of his commitment. In fact, if he refused to give a prospective employer or surety such information, he could very well be turned down for that reason. Finally, the fact that defendant had been involuntarily committed as a mentally ill person would not be a secret, irrespective of other material contained in the court record.

Whether a society should view mental illness as carrying with it more stigma than any other form of illness, it, in fact, does. A legal commitment for mental illness may have deleterious collateral effects in addition to stigma.

■ ■ We turn now to the procedural question. We have found no cases on point. The legislative history of amendments to statutes dealing with commitments for mental illness indicate concern for the rights of persons alleged to be mentally ill. The Oregon Supreme Court in *Wells v. Ellison,* 133 Or 155, 289 P 511 (1930), said:

"If there is any class of cases which should be

conducted with the utmost care to observe all of the requirements of the statute it is the cases conducted for the purpose of determining the sanity of a citizen * * *." 133 Or at 159.

The state's position is that the trial court properly denied defendant's motion to dismiss and the petition by one of the two signers of the notice required by ORS 426.070, in which he disavowed it and sought its withdrawal. The state argues:

"The notice of mental illness which initiated these proceedings was in conformity with the requirements of ORS 426.070. It was 'in writing, under oath, by two persons.' Upon receipt of the notification the jurisdiction of the court attached. The continuation of the proceedings thereafter was solely within the discretion of the court and the court's jurisdiction was not subject to being withdrawn by either or both of the persons invoking that jurisdiction. The question being one of vital concern to the public generally, once the inquiry is instituted the public's interest cannot be set aside by the action of the initiators * * *.

"* * * * *

"* * * As distasteful as that examination may be, the individual's inconvenience is outweighed by the public's concern with the control and care of those found to be mentally ill. Deprivation of liberty and freedom and the stigma of insanity do not arise until the determination of mental illness has been made, after hearing, with assistance of counsel, and upon examination by impartial physicians. These safeguards are provided by the statutory procedure and were followed in the defendant's proceedings."

While the state's argument is not without persuasive qualities, we are of the opinion that it is more compatible with legislative intent as we perceive it to construe ORS 426.070 to require as a condition prece-

dent to a commitment hearing that the "writing under oath by two persons" be continuing averments on the part of both persons as of the time the proceedings commence.

Reversed.