# GARLOTTE *v.* FORDICE, GOVERNOR OF MISSISSIPPI

No. 94–6790.   Argued April 24, 1995—Decided May 30, 1995

GINSBURG, J., delivered the opinion of the Court, in which STEVENS, O'CONNOR, SCALIA, KENNEDY, SOUTER, and BREYER, JJ., joined. THOMAS, J., filed a dissenting opinion, in which REHNQUIST, C. J., joined, *post*, p. 47.

*Brian D. Boyle*, by appointment of the Court, 513 U. S. 1125, argued the cause for petitioner. With him on the briefs were *James R. Asperger* and *Matthew B. Pachman.*

*Marvin L. White, Jr.*, Assistant Attorney General of Mississippi, argued the cause for respondent. With him on the brief were *Mike Moore*, Attorney General, and *Jo Anne M. McLeod* and *John L. Gadow*, Special Assistant Attorneys General.*

JUSTICE GINSBURG delivered the opinion of the Court.

To petition a federal court for habeas corpus relief from a state-court conviction, the applicant must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U. S. C. § 2254(a); see also 28 U. S. C. § 2241(c)(3). In *Peyton* v. *Rowe*, 391 U. S. 54 (1968), we held that the governing federal prescription permits prisoners incarcerated under consecutive state-court sentences to apply for federal habeas relief from sentences they had not yet begun to serve. We said in *Peyton* that, for purposes of habeas relief, consecutive sentences should be treated as a continuous series; a prisoner is "in custody in violation of the

---

*\**Harold J. Krent* filed a brief for the Post-Conviction Assistance Project of the University of Virginia et al. as *amici curiae* urging reversal.

*Kent S. Scheidegger* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging affirmance.

Constitution," we explained, "if any consecutive sentence [the prisoner is] scheduled to serve was imposed as the result of a deprivation of constitutional rights." *Id.*, at 64–65.

The case before us is appropriately described as *Peyton*'s complement, or *Peyton* in reverse. Like the habeas petitioners in *Peyton*, petitioner Harvey Garlotte is incarcerated under consecutive sentences. Unlike the *Peyton* petitioners, however, Garlotte does not challenge a conviction underlying a sentence yet to be served. Instead, Garlotte seeks to attack a conviction underlying the sentence that ran first in a consecutive series, a sentence already served, but one that nonetheless persists to postpone Garlotte's eligibility for parole. Following *Peyton*, we do not disaggregate Garlotte's sentences, but comprehend them as composing a continuous stream. We therefore hold that Garlotte remains "in custody" under all of his sentences until all are served, and now may attack the conviction underlying the sentence scheduled to run first in the series.

I

On September 16, 1985, at a plea hearing held in a Mississippi trial court, Harvey Garlotte entered simultaneous guilty pleas to one count of possession with intent to distribute marijuana and two counts of murder. Pursuant to a plea agreement, the State recommended that Garlotte be sentenced to a prison term of three years on the marijuana count, to run consecutively with two concurrent life sentences on the murder counts. App. 43. State law required Garlotte to serve at least ten months on the marijuana count, Miss. Code Ann. §47–7–3(1)(c)(ii) (Supp. 1994), and at least ten years on the concurrent life sentences. §47–7–3(1).

At the plea hearing, the trial judge inquired whether the State wanted Garlotte to serve the life sentences before the three-year sentence: "[A] three year sentence [on the marijuana possession count] to run consecutive to th[e] two life

sentences?" the judge asked. The prosecutor expressed indifference about the order in which the sentences would run: "Either that way, your Honor or allow the three years to run first. In other words, we're just talking about a total of three years and then life or life and then three years." App. 43. The judge next asked Garlotte's counsel about his understanding of the State's recommendation. Defense counsel replied, without elaboration: "[I]t's my understanding that the possession case is to run first and then the two life sentences." *Id.*, at 44. The court saw "no reason not to go along with the recommendation of the State." *Id.*, at 50. Without further explanation, the court imposed the sentences in this order: the three-year sentence first, then, consecutively, the concurrent life sentences. *Ibid.*

Garlotte wrote to the trial court seven months after the September 16, 1985 hearing, asking for permission to withdraw his guilty plea on the marijuana count. The court's reply notified Garlotte of the Mississippi statute under which he could pursue postconviction collateral relief. *Id.*, at 51. Garlotte unsuccessfully moved for such relief. Nearly two years after the denial of Garlotte's motion, the Mississippi Supreme Court rejected his appeal. *Garlotte* v. *State*, 530 So. 2d 693 (1988). On January 18, 1989, the Mississippi Supreme Court denied further postconviction motions filed by Garlotte. By this time, Garlotte had completed the period of incarceration set for the marijuana offense, and had commenced serving the life sentences.

On October 6, 1989, Garlotte filed a habeas corpus petition in the United States District Court for the Southern District of Mississippi, naming as respondent Kirk Fordice, the Governor of Mississippi.[1] Adopting the recommendation of a

---

[1] Garlotte asserted that he was entitled to relief because his guilty plea was not knowing, intelligent, and voluntary, he did not receive effective assistance of trial counsel, he was subjected to double jeopardy, and his sentence was unusual and disproportionate. App. 6.

Federal Magistrate Judge, the District Court denied Garlotte's petition on the merits. App. 18.

Before the United States Court of Appeals for the Fifth Circuit, the State argued for the first time that the District Court lacked jurisdiction over Garlotte's petition. 29 F. 3d 216, 217 (1994). The State asserted that Garlotte, prior to the District Court filing, had already served out the prison time imposed for the marijuana conviction; therefore, the State maintained, Garlotte was no longer "in custody" under that conviction within the meaning of the federal habeas statute. *Ibid.* Garlotte countered that he remained "in custody" until all sentences were served, emphasizing that the marijuana conviction continued to postpone the date on which he would be eligible for parole. *Id.*, at 218.

Adopting the State's position, the Fifth Circuit dismissed Garlotte's habeas petition for want of jurisdiction. *Ibid.* The Courts of Appeals have divided over the question whether a person incarcerated under consecutive sentences remains "in custody" under a sentence that (1) has been completed in terms of prison time served, but (2) continues to postpone the prisoner's date of potential release.[2] We granted certiorari to resolve this conflict, 513 U. S. 1123 (1995), and now reverse.[3]

## II

The federal habeas statute authorizes United States district courts to entertain petitions for habeas relief from state-court judgments only when the petitioner is "in custody in violation of the Constitution or laws or treaties of

---

[2] Compare *Fawcett* v. *Bablitch,* 962 F. 2d 617, 618 (CA7 1992) ("in custody"); *Bernard* v. *Garraghty,* 934 F. 2d 52, 55 (CA4 1991) (same); and *Fox* v. *Kelso,* 911 F. 2d 563, 568 (CA11 1990) (same), with *Allen* v. *Dowd,* 964 F. 2d 745, 746 (CA8) (not "in custody"), cert. denied, 506 U. S. 920 (1992).

[3] Garlotte, who proceeded *pro se* in the courts below, filed along with his petition for certiorari a motion for appointment of counsel. After we granted certiorari, we appointed Brian D. Boyle, of Washington, D. C., to represent Garlotte. 513 U. S. 1125 (1995).

the United States." 28 U. S. C. § 2254(a); see also 28 U. S. C. § 2241(c)(3). In *Peyton* v. *Rowe*, 391 U. S. 54 (1968), we held that the statute authorized the exercise of habeas jurisdiction over the petitions of two State of Virginia prisoners, Robert Rowe and Clyde Thacker. Rowe and Thacker were incarcerated under consecutive sentences; both sought to challenge sentences slated to run in the future. Virginia, relying on *McNally* v. *Hill*, 293 U. S. 131 (1934), argued that the habeas petitions were premature. Overruling *McNally*, we explained:

> "[I]n common understanding 'custody' comprehends respondents' status for the entire duration of their imprisonment. Practically speaking, Rowe is in custody for 50 years, or for the aggregate of his 30- and 20-year sentences. For purposes of parole eligibility, under Virginia law he is incarcerated for 50 years. Nothing on the face of § 2241 militates against an interpretation which views Rowe and Thacker as being 'in custody' under the aggregate of the consecutive sentences imposed on them. Under that interpretation, they are 'in custody in violation of the Constitution' if any consecutive sentence they are scheduled to serve was imposed as the result of a deprivation of constitutional rights." 391 U. S., at 64–65 (citations omitted).

The habeas petitioners in *Peyton* sought to present challenges that, if successful, would advance their release dates. That was enough, we concluded, to permit them to invoke the Great Writ. *Id.*, at 66–67.

Had the Mississippi trial court ordered that Garlotte's life sentences run before his marijuana sentence—an option about which the prosecutor expressed indifference—*Peyton* unquestionably would have instructed the District Court to entertain Garlotte's present habeas petition. Because the marijuana term came first, and Garlotte filed his habeas peti-

tion (following state-court proceedings) after prison time had run on the marijuana sentence, Mississippi urges that *Maleng* v. *Cook*, 490 U. S. 488 (1989) *(per curiam)*, rather than *Peyton*, controls.

The question presented in *Maleng* was "whether a habeas petitioner remains 'in custody' under a conviction after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted." 490 U. S., at 492. We held that the potential use of a conviction to enhance a sentence for subsequent offenses did not suffice to render a person "in custody" within the meaning of the habeas statute. *Ibid.*

*Maleng* recognized that we had "very liberally construed the 'in custody' requirement for purposes of federal habeas," but stressed that the Court had "never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction." *Ibid.* "[A]lmost all States have habitual offender statutes, and many States provide . . . for specific enhancement of subsequent sentences on the basis of prior convictions," *ibid.*; hence, the construction of "in custody" urged by the habeas petitioner in *Maleng* would have left nearly all convictions perpetually open to collateral attack. The *Maleng* petitioner's interpretation, we therefore commented, "would read the 'in custody' requirement out of the statute." *Ibid.*[4]

Unlike the habeas petitioner in *Maleng*, Garlotte is serving consecutive sentences. In *Peyton*, we held that "a prisoner serving consecutive sentences is 'in custody' under any one of them" for purposes of the habeas statute. 391 U. S.,

---

[4] We left open the possibility, however, that the conviction underlying the expired sentence might be subject to challenge in a collateral attack upon the subsequent sentence that the expired sentence was used to enhance. *Maleng*, 490 U. S., at 494.

at 67. Having construed the statutory term "in custody" to require that consecutive sentences be viewed in the aggregate, we will not now adopt a different construction simply because the sentence imposed under the challenged conviction lies in the past rather than in the future.[5]

Mississippi urges, as a prime reason for its construction of the "in custody" requirement, that allowing a habeas attack on a sentence nominally completed would "encourage and reward delay in the assertion of habeas challenges." Brief for Respondent 28. As Mississippi observes, in *Peyton* we rejected the prematurity rule of *McNally* in part because of "the harshness of a rule which may delay determination of federal claims for decades." *Peyton*, 391 U. S., at 61. Mississippi argues that Garlotte's reading of the words "in custody" would undermine the expeditious adjudication rationale of *Peyton*. Brief for Respondent 6–7, 27–28.

Our holding today, however, is unlikely to encourage delay. A prisoner naturally prefers release sooner to release later. Further, because the habeas petitioner generally bears the burden of proof, delay is apt to disadvantage the petitioner more than the State. Nothing in this record, we note, suggests that Garlotte has been dilatory in challenging his marijuana conviction. Finally, under Habeas Corpus Rule 9(a), a district court may dismiss a habeas petition if the State

---

[5] That Mississippi itself views consecutive sentences in the aggregate for various penological purposes reveals the difficulties courts and prisoners would face trying to determine when one sentence ends and a consecutive sentence begins. For example, Mississippi aggregates consecutive sentences for the purpose of determining parole eligibility, see Miss. Code Ann. § 47–7–3(1) (Supp. 1994) ("Every prisoner ... who has served not less than one-fourth (1/4) of *the total of such term or terms* for which such prisoner was sentenced ... may be released on parole as hereinafter provided . . . .") (emphasis added), and for the purpose of determining commutation of sentences for meritorious earned-time credit. See Miss. Code Ann. § 47–5–139(3) (1981) ("An offender under two (2) or more consecutive sentences shall be allowed commutation based upon *the total term* of the sentences.") (emphasis added).

"has been prejudiced in its ability to respond to the petition by [inexcusable] delay in its filing."

\* \* \*

Under *Peyton,* we view consecutive sentences in the aggregate, not as discrete segments. Invalidation of Garlotte's marijuana conviction would advance the date of his eligibility for release from present incarceration. Garlotte's challenge, which will shorten his term of incarceration if he proves unconstitutionality, implicates the core purpose of habeas review. We therefore hold that Garlotte was "in custody" under his marijuana conviction when he filed his federal habeas petition. Accordingly, the judgment of the Court of Appeals for the Fifth Circuit is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS, with whom THE CHIEF JUSTICE joins, dissenting.

The Court concludes that a habeas petitioner may assert that he "is in custody in violation of the Constitution or laws or treaties of the United States," 28 U. S. C. § 2254(a), even when the petitioner admits that the conviction he wishes to challenge has expired. Because this construction of the habeas statute is neither required by our case law nor, more importantly, by the statute, I dissent.

In holding that Garlotte was in custody for his expired marijuana conviction, the Court relies heavily on *Peyton* v. *Rowe,* 391 U. S. 54 (1968). There, petitioners wished to challenge sentences that they had not yet begun to serve, claiming that they were nevertheless "in custody" under these sentences. Overruling *McNally* v. *Hill,* 293 U. S. 131 (1934), we held that such challenges could proceed. Practical considerations drove us to adopt a rule permitting early challenges to convictions. Allowing challenges to sentences that

had yet to commence might prevent stale claims from being brought years after the crime and trial. *Peyton, supra,* at 62–63. Recognizing that the first reason for finding the petitioners in *Peyton* "in custody" is not present here (and indeed may cut against the majority's conclusion), the Court relies on the second ground, namely, that a prisoner serving time under consecutive sentences "is 'in custody' under any one of them" for purposes of § 2241(c)(3). *Ante,* at 45 (some internal quotation marks omitted) (quoting 391 U. S., at 67).[1]

In my view, *Peyton* ought to be construed as limited to situations in which a habeas petitioner challenges a yet unexpired sentence. This would satisfy *Peyton*'s policy concerns by permitting challenges to unserved sentences at an earlier time. More importantly, this interpretation would also make sense of the Court's proper insistence in *Maleng* v. *Cook,* 490 U. S. 488 (1989), that the habeas statute does not permit prisoners to challenge expired convictions. See *id.,* at 490–491 ("We have interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed"). The majority, however, relies upon broad language in one opinion to ignore language in another.[2] Given

---

[1] The Court argues that because Mississippi "views consecutive sentences in the aggregate for various penological purposes," that fact somehow "reveals the difficulties courts and prisoners would face trying to determine when one sentence ends and a consecutive sentence begins." *Ante,* at 46, n. 5. We face many difficulties in interpreting statutes. Those difficulties should not lead us to conclude that petitioner was "in custody" any more than they should lead us to decide that he was not "in custody."

[2] I recognize that *Peyton*'s concluding paragraph enunciated a broad "hold[ing]." 391 U. S., at 67. Other language in the opinion suggests a narrower holding, however. See *id.,* at 64–65 (prisoners are in custody "if any consecutive sentence they *are scheduled to serve* was imposed as the result of a deprivation of constitutional rights") (emphasis added). *Maleng,* itself, described *Peyton*'s holding as permitting a prisoner "who was serving two consecutive sentences imposed . . . [to] challenge the second sentence *which he had not yet begun to serve.*" 490 U. S., at 493 (emphasis added).

the statute's text and the oddity of asserting that Garlotte is still serving time under the expired marijuana conviction, I would read *Peyton* narrowly. Accordingly, I dissent.