Submitted on record and briefs February 20; resubmitted En Banc July 8, petition for writ of habeas corpus dismissed as moot September 30, 1998

## CLARENCE EX JONES,
*Appellant,*

*v.*

## S. Frank THOMPSON,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

(94C-13804; CA A97472)

968 P2d 380

Clarence Ex Jones filed the briefs *pro se*.

Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General, filed the brief for respondent.

EDMONDS, J.

Warren, J., dissenting.

## EDMONDS, J.

Plaintiff appeals from a judgment dismissing his petition for a writ of habeas corpus. ORS 34.310 to ORS 34.730. He seeks immediate release from custody under ORS 34.700(1). We dismiss plaintiff's petition as moot.

This case has previously been before us. *Jones v. Armenakis,* 144 Or App 23, 925 P2d 130 (1996), *mod* 146 Or App 198, 932 P2d 99 (1997). The petition for a writ of habeas corpus was filed in November 1994. The order on appeal before us postpones a parole release date in 1994. Plaintiff appealed after the trial court dismissed plaintiff's petition on its own motion. We held that the summary dismissal was error and remanded. To give context to the reader, we quote from our first opinions:

> "Plaintiff's petition alleged: In 1985, he was convicted of armed robbery and robbery; in 1986 and 1993, the Board of Parole (Board) established his parole release date as October 18, 1994; on September 25, 1994, he received a 'disciplinary misconduct' report for assault, disobedience of an order and disrespect; 'on or before' October 11, 1994, an employee of the Department of Corrections recommended that his parole release date be reset; that recommendation was 'contrary' to Department of Correction's rules on prison term modification, OAR 291-97-130(1) to (6), because he had not been found guilty of a violation; on October 11, 1994, the Board rescinded his parole release date without notice or hearing 'pending [receipt of a] disciplinary report from Department of Corrections'; on October 17, 1994, he was found guilty of violating various rules of prohibited prisoner conduct; on November 4, 1994, he received an order from the Board 'noting' that the Board had received the disciplinary report requesting extension of the parole release date and setting a postponement hearing for November 30, 1994.

> "Plaintiff alleged that the above 'procedures,' which used the October 11 employee recommendation to rescind or postpone his release date, were in contravention of ORS 144.125(2) and violated his state and federal rights against *ex post facto* laws, equal privileges and immunities, equal protection of the laws and due process." 144 Or App at 25.

After our opinion issued, the then-defendant Armenakis petitioned for reconsideration, which we allowed. We reiterated that we could not affirm a summary dismissal of a petition for habeas corpus "[w]hen, as here, the court fails to enter the required reasons as to why the allegations lack merit * * *." 146 Or App at 200. On remand, the trial court issued an order to show cause why the writ should not be allowed. Defendant moved to dismiss the petition as moot based on a subsequent order[1] by the parole board postponing plaintiff's parole release date to October 1998. The trial court agreed with defendant's motion and dismissed the petition in April 1997 on the ground that the order of which plaintiff complains was no longer in effect. Plaintiff challenges that ruling by this appeal.

■■ We agree with the trial court that plaintiff's petition is moot. A habeas corpus writ commands a custodian to bring a petitioner before the court to inquire into the legality of the imprisonment at the time that the petition is filed. *Penrod/ Brown v. Cupp*, 283 Or 21, 581 P2d 934 (1978); *see also Payton v. Thompson*, 156 Or App 217, 968 P2d 388 (1998) (holding that the remedy of habeas corpus is not available when there is no entitlement to release on the date that the petition is filed). Also, our decision in *Meriweather v. Board of Parole*, 140 Or App 415, 915 P2d 467 (1996), is instructive on the issue of mootness. There, the plaintiff sought judicial review of an order of the parole board establishing a parole consideration date. During the pendency of review, the date passed. One of the plaintiff's allegations was that the board had erred by refusing to accept a psychological evaluation that contended that the plaintiff's dangerous mental condition was in remission. We held that the plaintiff's claim was now moot, because the earlier order had been superseded by a subsequent order based on a new report that the petitioner's dangerous condition was not absent or in remission. We relied on the general principle that a case becomes moot when, because of a change in circumstances, a decision would resolve merely an abstract question without practical effect. That reasoning applies to plaintiff's application for a writ of

[1] Plaintiff initiated a habeas corpus proceeding regarding that order on July 8, 1996. Relief was denied by the trial court and an appeal is currently pending.

habeas corpus in this case. The relief that plaintiff seeks is release on parole. His entitlement to that relief is predicated on the 1994 board order that has been superseded. Any decision about its legality would resolve merely an abstract question without practical effect.

The dissent would hold otherwise. First, it posits that once the Department of Corrections (DOC) acquires custody of an inmate, the sentencing judgment has no effect other than to set the outer limit of custody. Then it asserts that the defendant's present custody of plaintiff is dependent on the 1994 order, which it contends was "invalid." It reasons that because the board applied rules for release in 1994 that constituted an *ex post facto* application, the 1996 order based on plaintiff's custodial status under the 1994 order is also invalid, thereby mandating plaintiff's release on parole under ORS 144.245(1). However, ORS 144.245(1) provides:

> "When the State Board of Parole and Post-Prison Supervision has set a date on which a prisoner is to be released upon parole, *the prisoner shall be released on that date* unless the prisoner on that date remains subject to an unexpired minimum term during which the prisoner is not eligible for parole, in which case the prisoner shall not be released until the expiration of the minimum term." (Emphasis added.)

In other words, the statute does nothing more than authorize the release of the inmate on parole on the date set by the board when that date arrives.

Moreover, the dissent's premise that defendant's present custody of plaintiff is predicated on the validity of the 1994 release order results from a misunderstanding of how the statutes governing incarceration by DOC and release on parole by the parole board work together in executing a sentence from a trial court. DOC's custody of plaintiff was and continues to be pursuant to the judgments that imposed his sentences. ORS chapter 137 sets forth DOC's authority in that regard. ORS 137.310 authorizes DOC to execute the sentence contained within a judgment entered by the trial court. ORS 137.124[2] provides for the commitment of a felon to the

---

[2] At the time plaintiff was convicted, ORS 137.124(1) provided:

"If the court imposes a sentence of imprisonment upon conviction of a felony, it shall not designate the correctional facility in which the defendant is to

legal and physical custody of DOC. ORS 137.320 requires the sheriff to deliver the defendant to the DOC's institution to which the defendant is assigned, together with a copy of sentencing judgment. Upon receipt of the judgment, the Department computes the duration of the defendant's sentence and executes the judgment by retaining custody of the defendant until he or she has completed the sentence. ORS 137.370.

ORS chapter 144 expresses the parole board's authority in connection with the DOC's authority under ORS chapter 137. ORS 144.050[3] authorizes the release on parole of any inmate who was committed to the Department for an offense committed prior to November 1, 1989. ORS 144.120 requires the board to hold an initial parole hearing within six months of the commitment of an inmate to the Corrections Department and to set an initial release date. ORS 144.245 authorizes release by DOC on the initial date unless the board acts to extend the release date before the release date occurs. The release of an inmate on parole serves to interrupt DOC's custody, but it does not negate the sentence. The sentence authorizes DOC's custody until the defendant completes the sentence either by serving it in the custody of DOC or by serving it on parole. Thus, in concept, release on parole acts as an alternative means of serving a sentence. Rather than serving it entirely in DOC's custody, the inmate is permitted to serve part of the sentence on parole. In the event that an inmate is unsuccessful in serving the remainder of his sentence on parole, "[t]he board may, in its discretion, suspend or revoke parole if it determines that parole is not in the best interest of the parolee, or in the best interest of society." ORS 144.270(2)(g). The effect of a revocation of parole is that the prisoner returns to the custody of DOC to continue to serve the sentence as imposed by the trial court.

---

be confined but shall commit the defendant to the legal and physical custody of the Corrections Division."

[3] ORS 144.050 provided:

"Subject to applicable laws, the State Board of Parole may authorize any inmate, who is committed to the legal and physical custody of the Corrections Division to go upon parole subject to being arrested and detained under written order of the board or as provided in ORS 144.350. The state board may establish rules and regulations applicable to parole."

■  It follows that when ORS chapters 137 and 144 are read together, the sentence in a judgment continues to have efficacy, even though a prisoner is released on parole and that, contrary to the dissent's assertion, DOC's authority to incarcerate a prisoner is not vitiated by an unlawful parole release order. Rather, the parole board's exercise of its authority to release an inmate on parole determines where and how a convicted defendant will serve the sentence that has been imposed and is being executed at a particular time. At most, the unlawfulness of a parole release order requires the board to reconsider the date it has set for release. It does not *ipso facto* reinstate the earlier release order or affect the authority of DOC, a different agency, to hold the inmate in custody pursuant to a lawful sentence that has yet to be completed.

■  Here, the parole board undertook in 1994 to review plaintiff's initial release date before the date of his scheduled release. It decided to extend the release date, pursuant to its authority under ORS 144.125, before the date for scheduled release arrived. Although the parole board's action may have involved an *ex post facto* application of the statutory release criteria not in effect at the time that plaintiff committed his crime, the mandatory release provisions of ORS 144.245(1) were not triggered by the Board's decision. That statute mandates release on parole when the superintendent has in hand an order from the parole board that establishes a particular date for release and the date for release arrives. Until both of those events occur, the trial court's judgment requires the superintendent to keep a prisoner in custody under the provisions of ORS chapter 137. What the superintendent had in hand, at the time in 1994 when plaintiff was initially scheduled for release, was an unchallenged order that extended the date of his release on parole to 1996. Even if that order was invalid, the board was entitled to reconsider the postponement of parole under the proper criteria as an exercise of its statutory authority. Pursuant to plaintiff's sentence, the only authority that DOC had at the time was to continue to hold plaintiff in custody until the board told it to release him.

The dissent relies on several federal court cases in support of its argument that the 1994 order continues to have collateral consequences. The holdings in those cases differ

significantly from the issue here because they involve the enhancement of sentences as a result of prior convictions that are under collateral attack. In this case, there has been no increase in plaintiff's sentence because of a prior conviction. Plaintiff's sentence is what it is, regardless of the board's 1994 order postponing plaintiff's release on parole. Because the remedy of habeas corpus focuses on whether a plaintiff is entitled to immediate release at the time that the petition is filed, the trial court did not err when it dismissed plaintiff's petition. Until the parole board establishes a date for release that occurs when an order for release is in effect, defendant is without authority to release plaintiff under the sentencing judgment that authorizes his custody.[4] In plaintiff's case, those two events have never coincided. Consequently, the provisions of ORS 144.245(1) have never been triggered. In sum, plaintiff's request that we now determine the constitutionality of the 1994 parole release order would require us to resolve an abstract question without practical fact in light of the superseding orders of the board that have extended his parole release date to October 1998.

Petition for writ of habeas corpus dismissed as moot.

**WARREN, J.,** dissenting.

The majority misunderstands the law that applies to plaintiff[1] and others who are subject to the parole matrix system. As a result, it asks the wrong questions and gives the wrong answers. When we ask the right questions we find that plaintiff's challenge to the 1994 order is not moot and that we should reverse the judgment and remand the case to the trial court to decide the merits of that challenge.

The foundation for the majority's conclusion that the case is moot is its understanding that plaintiff's sentence in

---

[4] Had the 1994 order extending plaintiff's release date to 1996 been successfully challenged while it was in effect, it would not have vitiated the sentence. Rather, a successful challenge would have resulted in remand to the parole board for it to apply the correct criteria and to determine a new release date. *See, e.g., Meadows v. Schiedler*, 143 Or App 213, 221, 924 P2d 314 (1996) (holding that the parole board was required to consider whether plaintiff's parole should be postponed under the criteria in effect at the time the plaintiff committed his crime).

[1] The majority, reflecting our common usage in habeas corpus cases, refers to the party seeking the writ as "plaintiff," although technically he is a "petitioner." I will follow the majority's example in this regard.

itself justifies his current incarceration and that the actions of the Board of Parole and Post-Prison Supervision gave him no right to release. In the majority's view, the Board's order granting a specific parole release date has no effect on the validity of plaintiff's incarceration, because the Board attempted to extend the release date before it actually arrived. It does not matter to the majority that the Board's 1994 order extending the release date may have been invalid; according to the majority, the subsequent 1996 order cures that invalidity. That is true, the majority holds, even if the invalid 1994 order was the only reason that plaintiff was incarcerated when the Board issued the 1996 order. The majority holds that the 1996 order renders plaintiff's challenge to the 1994 order moot, even if he was entitled to release when he originally filed this petition. It thereby allows the time that is necessary for the judicial system to resolve plaintiff's claims to become a method for denying him the release to which he may otherwise be entitled.

The majority bases its decision on a fundamental misunderstanding of the parole matrix system, which was in effect when plaintiff committed his offense and which therefore applies to him. I will therefore first discuss that system. ORS 144.780(1)[2] required the Board to adopt rules that established "ranges of duration of imprisonment to be served for felony offenses prior to release on parole" in accordance with the standards described in ORS 144.780(2), subject to adjustment for aggravation or mitigation under ORS 144.785. What the statute calls "ranges of duration" became the parole "matrix" that the Board applied in determining parole release dates for prisoners before the adoption of the sentencing guidelines. The law in 1985 required the Board to conduct a parole hearing and to set an initial parole release date within six months of the prisoner's incarceration. ORS 144.120(1). In setting the release date, the Board was to apply the matrix. ORS 144.120(2).[3] ORS 144.245(1) describes the effect of a parole release date under the matrix system:

[2] Unless otherwise stated, all statutory references are to the 1985 versions, which were in effect at the time of plaintiff's crimes.

[3] In some circumstances, which do not apply in this case, the Board could decline to set a parole release date. ORS 144.120(4), (5).

"When the State Board of Parole has set a date on which a prisoner is to be released upon parole, *the prisoner shall be released on that date* unless the prisoner on that date remains subject to an unexpired minimum term during which the prisoner is not eligible for parole, in which case the prisoner shall not be released until the expiration of the minimum term."[4] (Emphasis added.)

A parole release date, thus, creates a specific time, generally shorter than the prisoner's sentence, when the prisoner is legally entitled to be freed from prison and after which further confinement would be illegal. The only exception to that right to release is the Board's authority to extend the parole release date for a specific reason under ORS 144.125 or some other applicable statute. In *Addicks v. Board of Parole*, 63 Or App 409, 412, 663 P2d 1310 (1983), we described the relationship between the prisoner's sentence and the workings of the matrix system:

"Under the present matrix system, a firm release date is established, using the ranges of duration of imprisonment determined under the matrix system. *The effect of the new system is to set prison terms*, although circumstances may arise after the setting of the release date that can result in a change."

As the Supreme Court succinctly stated, "The legislature has authorized the Board to determine the actual duration of an inmate's imprisonment." *Price v. Board of Parole*, 300 Or 283, 288, 709 P2d 1075 (1985).

The nature of the matrix system, thus, is directly contrary to much of the majority's discussion. Once the Board establishes a parole release date, the superintendent's authority to confine the prisoner after that date is unrelated to the prisoner's sentence. Rather, it depends on whether the Board has validly revoked or extended the release date. If the Board has not, ORS 144.245(1) requires the prisoner's release. The only remaining function of the original sentence is to establish the outermost limit of the Board's authority to extend the release date. With that exception, the sentence has dropped out of the picture.

---

[4] So far as the record shows, plaintiff is not subject to an unexpired minimum term.

The real question in this case is whether, after the Board issued the 1996 order, plaintiff may challenge the 1994 order that kept him in prison beyond his original release date. Because the Board would have had no authority to issue the 1996 order if plaintiff had not been in prison,[5] I would hold that the collateral consequences of the 1994 order continue to affect plaintiff and that his challenge to it, therefore, is not moot.

Plaintiff was originally scheduled to be released on parole on or before October 18, 1994.[6] On October 11, the Board rescinded his parole release date because of a pending disciplinary infraction. Thereafter, it extended his parole release date to October 18, 1996. In 1996, while this case was pending in the trial court, the Board issued a new order, extending the parole release date to October 1998. That action does not make plaintiff's challenge to the 1994 order moot, because the 1994 order has collateral consequences that continue to affect plaintiff.

A case that is otherwise justiciable, but in which a decision will no longer have a practical effect on or concerning the rights of the parties, is moot. *State v. Macy,* 320 Or 408, 412, 886 P2d 1010 (1994). The collateral consequences aspect of the mootness doctrine is part of determining whether a decision will have a practical effect on the rights of a party. It is well established in Oregon, and we discussed it in some detail in *State v. Van Tassel,* 5 Or App 376, 484 P2d 1117 (1971). In that case, we held that the collateral effects of an involuntary mental commitment, including damage to reputation and the possibility of being held liable for the costs of the commitment, were such that whether the commitment was valid did not become moot upon the person's release.[7] In

---

[5] Contrary to the majority's somewhat curious suggestion, the Board's authority to revoke plaintiff's parole, if plaintiff had been released on his original release date, has nothing to do with the effect of an invalid extension of that date. Revocation requires some indication that the parolee violated a condition of parole, and the parolee has a right to a hearing on that issue. ORS 144.343. There is no basis for us to speculate that plaintiff, if he had been released as scheduled, would thereafter have violated his parole. At the very least, that possibility would not justify an otherwise illegal detention after the release date.

[6] This statement of the facts is based on the record before us and would not limit what the trial court might find based on a more complete record on remand.

[7] Since our decision in *State v. Van Tassel,* 5 Or App 376, 484 P2d 1117 (1971), the Supreme Court has held that a challenge to an order of the Psychiatric Security

reaching that conclusion we examined a number of criminal cases from this and other jurisdictions, all of which held that a case was not moot, even if the defendant had served the full sentence and paid the full fine, if the conviction continued to have identifiable collateral consequences. We noted that the United States Supreme Court had recently gone further by presuming that a conviction has collateral consequences and no longer requiring a party to identify specific consequences that applied to his or her particular case. 5 Or App at 379-83.

We have applied the collateral consequences rule in holding that a number of cases were not moot. *See, e.g.,* *Bagby v. OSP,* 118 Or App 421, 428, 847 P2d 898, *rev den* 317 Or 396 (1993) (challenge to placement in disciplinary segregation is not moot on release from placement because custody level is higher than previously and some programs are no longer available); *Yeon Street Partners v. Environmental Consulting,* 112 Or App 251, 255, 828 P2d 477 (1992) (tenant's appeal from preliminary judgment did not become moot when tenant moved out, because cannot predict what collateral consequences tenant would suffer from refusal to review permanent injunction); *State v. Meyer,* 31 Or App 775, 571 P2d 550 (1977) (appeal of contempt conviction not moot after sentence served, because conviction had collateral consequences beyond jail term); *Pyle v. Brooks,* 31 Or App 479, 570 P2d 990 (1977) (following *Van Tassel*). On the other hand, we have dismissed cases as moot when the appealing party could not identify any collateral consequences of the challenged action. *See, e.g., Frey v. Board of Parole,* 151 Or App 267, 948 P2d 738 (1997), *rev den* 326 Or 530 (1998) (no collateral consequences from order imposing incarceration for parole violation when petitioner had served term and Board had no authority to impose additional incarceration); *Stewart v. PSRB,* 125 Or App 576, 864 P2d 880 (1993) (order denying release moot when petitioner released under different order two weeks later and identified no collateral consequences of

Review Board became moot when the Board released the petitioner unconditionally. The mere possibility that the petitioner might be required to repay the cost of care did not keep the case from being moot when there was no indication that the state intended to seek repayment. *Brumnett v. PSRB,* 315 Or 402, 848 P2d 1194 (1993). Whatever effect the decision in *Brumnett* may have on the specific holding of *Van Tassel,* the Supreme Court's discussion is consistent with the collateral consequences analysis that we described there.

challenged order); *State v. Chase*, 120 Or App 523, 851 P2d 637 (1993) (order revoking probation and executing sentence moot when petitioner had served sentence and been discharged from parole and did not identify any collateral consequences of order).

In this case, if plaintiff had been released on his original parole date, he would not have been in prison in 1996, and the Board would have had no authority to issue the 1996 order. Thus, the 1994 order that kept plaintiff imprisoned was essential to the 1996 order under which he is presently incarcerated, and plaintiff's current incarceration is a collateral consequence of the 1994 order. He should therefore be able to challenge the 1994 order as part of an attack on his current imprisonment.

This application of the collateral consequences rule is implicit in our previous cases, although none of them deals with this precise situation. Federal habeas corpus cases concerning the use of an expired sentence to enhance a current sentence or otherwise to affect a current incarceration are closer to the facts of this case and lead to the same conclusion. Under the federal cases, an attack on an expired sentence is not moot if that sentence is a foundation for a current sentence. In this case, by the same reasoning, when an expired Board order is a foundation for a later order, and that later order provides the authority for the current imprisonment, an attack on the expired order is not moot.

*Collins v. Hesse*, 957 F2d 746 (10th Cir 1992), is typical of federal cases that hold that a district court should review an expired conviction when that conviction is used to enhance the petitioner's current sentence. Those cases often give primary attention to whether the petitioner is "in custody" for the purposes of jurisdiction under 28 USC § 2254, the federal habeas corpus statute. After resolving that question, they hold, almost as a matter of course, that if the petitioner is "in custody" for some reason arising from the expired conviction, an attack on the expired conviction is not moot.

In *Collins*, the petitioner was serving three consecutive life sentences as a habitual criminal. He sought relief from four expired convictions that, he asserted, were the basis for the habitual criminal determination. On appeal, the

Tenth Circuit agreed with the district court's conclusion that a prisoner who is in custody on a repeat offender sentence that is based on a previous conviction can attack the previous conviction even though the sentence on that conviction is fully satisfied. The court noted that, in common with other circuits, it had previously reached the same conclusion and stated that it was unaware of any federal appellate court that had decided the issue differently. *See also Young v. Vaughn,* 83 F3d 72, 76 (3d Cir 1996) (citing cases).[8] The appellate court's only disagreement with the district court was about whether there was evidence that the expired convictions were the basis for the habitual offender sentences. Because it concluded that there was such evidence, it reversed the district court's dismissal of the petition and remanded for a decision on the merits.

The federal courts apply these general principles to other situations in which the expired conviction may have affected the current confinement. Thus, in *Young,* the petitioner was convicted in state court in 1984 of burglary and was placed on probation. In 1989, during the probationary period on the 1984 conviction, he was convicted of robbery and sentenced to prison. As a result of the 1989 conviction, the state court revoked his probation on the 1984 conviction and sentenced him to prison. After completing the sentence for the 1989 conviction, but while still serving the sentence for the 1984 conviction, he filed a federal habeas petition attacking the 1989 conviction. The Third Circuit saw that situation as essentially identical to that of a prisoner in custody under a sentence that was enhanced as the result of a prior conviction: the petitioner sought "to attack a conviction whose sentence has expired but which caused the sentence

---

[8] The United States Supreme Court has not ruled on this precise issue. In *Spencer v. Kemna,* 523 US 1, 118 S Ct 978, 140 L Ed 2d 43 (1998), it held that a challenge to a parole revocation became moot when the petitioner's sentence expired while the habeas corpus petition was pending. Although the parole revocation thus had no collateral consequences, the Court's discussion of the collateral consequences rule is consistent with the appellate cases that we describe. In a related area, the Court has held that a person who receives consecutive sentences remains "in custody" under 28 USC § 2254 on an expired conviction so long as the person is in custody on any of the consecutive sentences. *Garlotte v. Fordice,* 515 US 39, 115 S Ct 1948, 132 L Ed 2d 36 (1995).

he is presently serving." *Id.* at 77-78. The petition, therefore, was not moot, and the district court erred by dismissing it.

In *Brock v. Weston*, 31 F3d 887 (9th Cir 1994), the petitioner had been convicted of assault in 1974 and had completed the 10-year sentence in 1984. In 1991, the state civilly committed him as a "sexually violent predator," using the 1974 conviction as one of the grounds for supporting that designation. The petitioner then filed a federal habeas petition attacking the validity of the 1974 conviction. The Ninth Circuit first held that the district court should have construed the petition as attacking the 1974 conviction in the context of the attack on the commitment as a sexually violent predator. It then instructed the district court, in accordance with a previous Ninth Circuit case, to determine whether the 1974 conviction had served as a predicate to the current commitment. If so, the district court should reach the merits of the challenge to the 1974 conviction. *Id.* at 890-91.

The federal rule, thus, is that a challenge to a previous conviction is not moot if the conviction plays any role in the petitioner's current incarceration. That rule is based on the collateral consequences of the expired conviction. The reasoning behind the federal rule is consistent with Oregon cases and applies to the Board orders involved in this case. Because the Board had no authority to issue the 1996 order if the 1994 order was invalid, the validity of the 1996 order—and, thus, the validity of plaintiff's current confinement—depends on the validity of the 1994 order. We should reverse and remand so that the trial court may determine that issue. Because we do not, I dissent.

Armstrong and Wollheim, JJ., join in this dissent.