EGAN, C. J.
*2 Appellant in this civil commitment case appeals a judgment committing him to the jurisdiction of the Mental Health Division for a period not to exceed 180 days. See ORS 426.130. On appeal, he asserts that the trial court plainly erred by failing to advise him of possible outcomes of the proceedings as required by ORS 426.100(1).[1] In response, the state asserts that, because appellant's 180-day commitment period has expired, we should dismiss the appeal as moot. In the alternative, the state contends that, in any event, the trial court did not err when advising appellant of the possible results of the commitment hearing. As explained below, we reject the state's contention that the appeal is moot. Furthermore, in light of our recent decision in State v. M. M. , 288 Or.App. 111, 405 P.3d 192 (2017), we agree with appellant that the trial court plainly erred in failing to advise him of all of the possible results of the proceedings. Accordingly, we reverse.
We begin by addressing the issue of mootness. As noted, the state asserts that the case is moot because the 180-day commitment period has expired. According to the state, there are not sufficient collateral consequences such that resolution of the issues will have a practical effect on appellant's rights. Appellant responds that the long-term consequences of commitment are significant. Among other things, appellant points to the *488 social stigma associated with civil commitment in support of his view that his appeal is not moot.
As the state acknowledges, contrary to its assertion that this case is moot, in State v. Van Tassel , 5 Or.App. 376, 385, 484 P.2d 1117 (1971), we held that an appeal from a civil commitment order does not become moot after the expiration of the commitment period. Specifically, we explained that involuntary commitment as a result of mental illness carries with it significant social stigma and that stigma constitutes a deleterious collateral consequence. In the state's *3 view, however, we should overrule our holding in Van Tassel . In support of its position, the state points out that, by statute, records of civil commitments are confidential. See ORS 426.160. Furthermore, the state contends that there is "good reason to question whether the reasoning in Van Tassel regarding the social effect of an involuntary commitment remains intact in light of changing societal attitudes toward mental illness and its treatment."
As we have explained, we will overrule a case only when it is "plainly wrong, a rigorous standard grounded in presumptive fidelity to stare decisis ." State v. Civil , 283 Or.App. 395, 406, 388 P.3d 1185 (2017) (internal quotation marks omitted); see State v. Ortega-Gonsalez , 287 Or.App. 526, 540 n. 5, 404 P.3d 1081 (2017) ("[T]he party seeking to change a precedent must affirmatively persuade us that it is clearly wrong.").
We begin by observing that, although Van Tassel was decided in 1971, we have more recently reaffirmed its reasoning that the stigma attendant to involuntary civil commitment is an important collateral consequence. In 2002, we held that, in light of the stigma attendant to a civil commitment, an appeal from an order continuing commitment, like an initial commitment order, does not become moot not-withstanding the expiration of the period of commitment:
"We conclude that this case is not moot. Although continuation of commitment obviously differs from an initial commitment in certain respects, the stigma that arises from commitment is a function not only of the fact of commitment but, also, of its duration. Bluntly, the longer someone is committed for a mental illness-six months versus one year; one year versus three years-the greater the attendant stigma. Like Chief Judge Schwab in Van Tassel , we decry the ignorance that generates such attitudes among many in our society. But they are undeniable."
State v. E. A. L. , 179 Or.App. 553, 556, 41 P.3d 440 (2002). We have continued to acknowledge the significant stigma associated with involuntary civil commitment in more recent appeals even though civil commitment records have been confidential throughout that time. See State v. S. R. J. , 281 Or.App. 741, 749, 386 P.3d 99 (2016) (acknowledging social *4 stigma attendant to civil commitment); State v. D. R. , 239 Or.App. 576, 582, 244 P.3d 916 (2010) (acknowledging serious "social stigma that [is] attendant to a civil commitment"); State v. G. L. , 238 Or.App. 546, 558, 243 P.3d 469 (2010) (civil commitment "carries deleterious collateral effects, including a social stigma * * * which affects the person's reputation and earning potential" (internal quotation marks omitted)). Cf. State v. Hauskins , 251 Or.App. 34, 38-39, 281 P.3d 669 (2012) (stigma associated with sanction of confinement imposed for contempt was collateral consequence that prevented appeal from being moot). Additionally, we observe that, although societal attitudes toward mental illness in general may have shifted over the years as the state asserts, that does not mean that societal attitudes have significantly shifted with respect to involuntary civil commitment, which can carry particular implications with respect to the nature or severity of an illness, as well as the person's potential dangerousness and ability to care for him or herself.
Furthermore, the question whether an appeal from a civil commitment order becomes moot after the expiration of the 180-day commitment period or the release of the committed person is currently pending before the Oregon Supreme Court in State v. K. J. B. (S064607). In that case, the state has argued, among other things, that our cases holding that civil commitment carries the deleterious collateral consequence of social stigma are incorrect. Thus, in K. J. B. , the Supreme *489 Court may well resolve, or at least inform, the question whether a judgment of involuntary commitment creates a social stigma of such magnitude that an appeal from that judgment is not rendered moot by the expiration of the commitment period or the release of the committed person. Under those circumstances, the state has failed to persuade us that we should revisit our holding in Van Tassel and the subsequent cases that have followed it. Accordingly, we adhere to that line of cases and reject the state's contention that this appeal is moot.
We turn, then, to appellant's assertion that the trial court committed plain error when it failed to advise him as required by ORS 426.100(1). See ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless *5 the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the court may, in its discretion, consider a plain error.").
Pursuant to ORS 426.100(1), a trial court conducting a civil commitment hearing must advise the person alleged to have a mental illness of, among other things, the possible results of the proceedings. The statute provides:
"At the time the person alleged to have a mental illness is brought before the court, the court shall advise the person of the following:
"(a) The reason for being brought before the court;
"(b) The nature of the proceedings;
"(c) The possible results of the proceedings;
"(d) The right to subpoena witnesses; and
"(e) The person's rights regarding representation by counsel."
ORS 426.100(1).
ORS 426.130 establishes the possible results of a civil commitment hearing. As we explained in State v. M. T. , 244 Or.App. 299, 305, 258 P.3d 1288 (2011) :
"If, following the presentation of evidence, a trial court determines that the allegedly mentally ill person is not mentally ill, 'the person shall be discharged forthwith.' ORS 426.100(1)(a). If, on the other hand, the court determines that the person is mentally ill, there are three possible results. If the person 'is willing and able to participate in treatment on a voluntary basis' and 'will probably do so,' the court '[s]hall order the release of the [person] and dismiss the case.' ORS 426.130(1)(b)(A). Alternatively, the court 'may order conditional release,' ORS 426.130 (1)(b)(B), or 'may order commitment of the individual to the [Oregon Health Authority],' ORS 426.130(1)(b)(C). If the court orders conditional release or commitment, the court shall establish a period of conditional release or commitment not to exceed 180 days. ORS 426.130(2)."
(First and second brackets in original.)
*6 In this case, the court advised appellant of some of the possible results of the hearing:
"I have to have clear and convincing evidence that you are having some mental health problems such that you're a danger to yourself, someone else, or you can't take care of yourself. If that is not proven to me today, I will dismiss the notice of mental illness and you will be free to leave.
"On the other hand, if it's proven to me today by clear and convincing evidence that you are mentally ill, then I could commit you to the Oregon Health Authority for a period not to exceed 180 days. So either I dismiss the notice and you leave today, or I commit you to the Oregon Health Authority for a period not to exceed 180 days."
According to appellant, in so advising him, the trial court failed to satisfy the requirements of ORS 426.100(1) because it did not inform him of the possibility of voluntary treatment or conditional release.
In M. M. , we held that a trial court is required to advise a person alleged to have a mental illness of all the possible results of the proceeding and that failure to do so is plain error. 288 Or.App. at 115-16, 405 P.3d 192. As we explained:
"[T]he trial court's error in failing to advise appellant of all the possible results of the proceedings is not reasonably in dispute. Although the court is required only *490 to give general and comprehensive information about the possible results of the hearing, that information must include all of those possible results, including voluntary treatment and conditional release, in order for the person alleged to have a mental illness to be able to adequately protect his or her interests and receive the benefit of a full and fair hearing."
Id. at 115, 405 P.3d 192 ; see State v. Brown , 310 Or 347, 355, 800 P.2d 259 (1990) (whether a trial court committed plain error depends on whether the error was "apparent" so that the legal point is obvious and not reasonably in dispute, and whether the error appears on the record so that we "need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable"). In light of M. M. , the trial court committed plain error in this case when it failed to advise appellant of all of the possible results of the proceeding.
*7 Furthermore, we conclude that it is appropriate to exercise our discretion to correct the trial court's plain error in this case for the same reasons set forth in M. M. Specifically, in light of the nature of civil commitment proceedings, the relative interests of the parties in those proceedings, the gravity of the violation, and the ends of justice, we exercise our discretion to address and correct the trial court's plain error in failing to fully advise appellant of the possible results of the proceedings as required by ORS 426.100(1)(c). See M. M. , 288 Or.App. at 116, 405 P.3d 192.
Reversed.

Appellant also raises an additional assignment of error challenging the trial court's determination that he had a mental illness. In light of our disposition of this case, we do not address that assignment.